781 F.2d 1028
 Leonard CARTER, Jr., Appellant,
and
Alphonso Pittman, Leroy Lewis, James M. Ross, Robert Lee
Chandler, Thomas Bethea, Plaintiffs,
v.
T. Don HUTTO, John Dalton, Defendants,
and
Andrew J. Winston, Lt. J. Boyd, Sgt. S.N. Jones, Officer
M.E. Torain, Officer R.L. Toulson, Officer C.C.
Abbarus, Appellees.
 No. 85-6008.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 11, 1985.
Decided Jan. 16, 1986.
 
 Beverly Warner Snukals (Mezzullo, McCandlish and Framme, on brief), for appellant.
 James W. Hopper (Gardner, Moss & Hopper, P.C., on brief), for appellees.
 Before WINTER, Chief Judge, WIDENER, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 HARRISON L. WINTER, Chief Judge:
 
 
 1
 The district court entered judgment for defendants in plaintiff's pro se action under 42 U.S.C. Sec. 1983 alleging that correctional officers of the Richmond City Jail illegally seized and destroyed certain of his legal papers while conducting a search of his cell. Plaintiff appeals; we vacate the judgment and remand the case for retrial. In our view, the district court committed reversible error in overly strict enforcement of its pretrial order and in failing to explain asserted non-compliance to a pro se litigant and afford him an opportunity to comply strictly.
 
 I.
 
 2
 On January 8, 1982, while plaintiff, Leonard Carter, Jr., was out of his cell at recreation, the cell was allegedly searched. He claims that in the process of the search, legal materials relating to his application for a writ of habeas corpus were seized and destroyed. Although he has no first-hand knowledge of the manner in which the search was conducted, he alleges that four named inmates were observers. He sued under 42 U.S.C. Sec. 1983, alleging unconstitutional interference with his access to the courts.
 
 
 3
 Carter's suit was referred to a magistrate for fact-finding and recommendation. Shortly thereafter, the magistrate entered a pretrial order requiring that Carter list his proposed witnesses, summarize their anticipated testimony and submit his own statement under oath that the witnesses had agreed to testify.[1] In response, Carter submitted a witness list in which he requested a writ of habeas corpus ad testificandum to secure the attendance of two of the four inmates identified as eyewitnesses in the complaint, with the explanation that they would testify to what they had observed during the search.[2] He neglected to include the sworn statement. The magistrate denied Carter's request for the attendance of his witnesses for "fail[ure] to comply with the specifics of the pretrial order." In explanation of the ruling, the magistrate said that Carter "has not provided a summary of what each witness is expected to say, and has failed to attach his own statement under penalty of perjury that the witnesses have agreed to testify as set forth." Carter renewed his request for the production of the witnesses at trial, stating that the witnesses would testify that they observed named officers removing papers, mattresses and pillows from the cell.[3] The magistrate again denied the request.
 
 
 4
 At trial, Carter testified in his own behalf, but his absence from the tier at the time of the alleged search left him with no first-hand knowledge of the events that transpired. Five correctional officers testified for the defense, denying any involvement in a search on that date. The magistrate concluded that no search occurred and no papers were taken. He recommended that judgment be entered for defendants and that the action be dismissed. His recommendation became the judgment of the district court.
 
 II.
 
 5
 We think that the magistrate committed reversible error in two respects. First, Carter complied substantially with the significant requirements of the pretrial order. Second, even had he not demonstrated substantial compliance, the magistrate should have made an effort to explain to Carter the deficiencies in his submission and afforded him an opportunity to cure these defects.
 
 
 6
 We approach resolution of the issues presented by this appeal fully cognizant of the liberality to be afforded pro se litigants. See, e.g., Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (pro se civil rights complaint of inmate held to less stringent standards than formal pleadings drafted by lawyers); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4 Cir.1978), cert. denied, 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386 (1979) (court appraising legal sufficiency of complaint must read liberally pro se prisoner claims brought under 42 U.S.C. Sec. 1983); Gordon v. Leeke, 574 F.2d 1147, 1151 (4 Cir.), cert. denied, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978) (pro se civil rights plaintiff should be granted leave to amend complaint despite failure to state how he could cure deficiencies).
 
 
 7
 We also recognize that Carter has alleged a valid claim based on the deprivation of access to the courts, a right of vital importance to prisoners and to the integrity of our criminal justice system. He has asserted that prison officials confiscated and/or destroyed his legal materials, some of which were irreplaceable,[4] thus infringing or rendering nugatory his constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977) (state's failure to provide legal research facilities denies inmates access to courts in violation of fourteenth amendment); Hudspeth v. Figgins, 584 F.2d at 1347-48 (allegation that correctional authorities threatened prisoner with physical harm to deter him from seeking judicial relief states cognizable claim under Sec. 1983); Oxendine v. Williams, 509 F.2d 1405, 1407 (4 Cir.1975) (confiscation of legal materials from prisoners constitutes unreasonable interference with access to courts). Were Carter to succeed in proving these allegations, his entitlement to some remedy would be beyond dispute.
 
 
 8
 Plaintiff's claim hinges on a factual conflict, i.e., whether the alleged search in fact occurred, the resolution of which in turn depends on the relative credibility of inmates Jones and Freeman on the one hand and the prison officials on the other. Where the record requires the trier of fact to make credibility choices, the need to observe the principal witnesses requires no elaboration. Ballard v. Spradley, 557 F.2d 476, 480 (5 Cir.1977); Stone v. Morris, 546 F.2d 730, 734 (7 Cir.1977); Miles v. Evans, 591 F.Supp. 623, 625 (N.D.Ga.1984); accord, Taylor v. Gibson, 529 F.2d 709, 716 (5 Cir.1976).
 
 
 9
 The requirement of the pretrial order that, if Carter desired the attendance of any witnesses, he must list them and summarize their anticipated testimony has a valid purpose. It establishes that a witness has relevant testimony before the government and the court incur expense in the production of the witness and expend judicial time in hearing his testimony. Although the magistrate declined to grant Carter's request for the production of Freeman and Jones, other courts have accepted summaries of testimony no more specific than Carter's witness list. In Miles v. Evans, 591 F.Supp. 623 (N.D.Ga.1984), plaintiff responded to a pretrial order by noting that his inmate witnesses " 'will testify about everything that is [written] in the complaint.' " Id. at 625. The court concluded that the two inmates would have relevant, first-hand information regarding plaintiff's claims, and, finding this summary adequate, invited the parties to address related issues. Similarly, in Jerry v. Francisco, 632 F.2d 252, 253 (3 Cir.1980), the plaintiff submitted to the magistrate the names of ten proposed witnesses, five of whom "will attest to law books," and five of whom "will attest to dental, hygienic, church and overcrowded conditions at jail." The court found this sufficient to permit it to proceed in its analysis. Based upon these authorities, we think that Carter was in substantial compliance with the requirement of the pretrial order that he summarize the expected testimony of witnesses that he wished produced.
 
 
 10
 The other reason assigned by the magistrate for his refusal to order production of the witnesses is that Carter failed to supply a statement that the witnesses were willing to testify in his behalf. While defendants contend that this requirement was a valid management tool properly employed by the magistrate, we do not agree. Once it is shown that a witness possesses relevant information, his presence and his testimony can be compelled especially where, as here, the two witnesses were inmates of the same penal institution in which Carter was lodged. The failure on the part of Carter to supply this statement cannot serve as any justification for denying him the production of these witnesses.
 
 
 11
 We therefore conclude that there was substantial compliance with the only valid provision of the pretrial order and that the magistrate erred in failing to have the witnesses produced.
 
 
 12
 Even if Carter failed sufficiently to disclose the substance of the testimony he anticipated, there can be little doubt, in light of his proffer at the trial, that, had he been apprised of the shortcomings of his witness response, he could have amended it to conform to the requirements of the pretrial order. Gordon v. Leeke counsels that leave to amend be freely granted to preserve a meritorious claim. 574 F.2d at 1151-52. The utmost freedom to amend, however, is of little value to an unadvised, unsophisticated inmate lacking the knowledge to identify lacunae in his pleadings. For this reason, we have held that pro se litigants are entitled to explicit notice of the consequences of various legal actions. Wright v. Collins, 766 F.2d 841, (4 Cir.1985); Roseboro v. Garrison, 528 F.2d 309 (4 Cir.1975). In Roseboro, we held that, before summary judgment may be entered against an inmate proceeding pro se under Sec. 1983, that litigant must be advised of his right to file responsive material and alerted to the possible consequences of failure to do so. 528 F.2d at 310. We quoted with approval Hudson v. Hardy, 412 F.2d 1091, 1094 (D.C.Cir.1968), stressing "the need for a form of notice sufficiently understandable to one in appellant's circumstances fairly to apprise him of what is required." In Wright, we extended the rationale of Roseboro to accord pro se litigants a right to notification of the consequences of failure to object to a magistrate's report. These authorities indicate that where, as here, the pretrial order did not adequately inform Carter of the degree of specificity necessary for an acceptable summary of the testimony he expected to elicit, and whereas Carter had obviously sought to comply,[5] it was incumbent on the magistrate to inform Carter of the deficiency of his response and afford him the opportunity to cure it before proceeding with the trial.
 
 III.
 
 13
 The merit, if any, in Carter's case could be established only by the testimony of the two missing witnesses. We think that Carter complied with the pretrial order and hence was entitled to have the witnesses produced. In any event, Carter was entitled to a simple explanation of why, in the view of the magistrate, he had failed to comply with the pretrial order and an opportunity to supply the omission. Because Carter was given neither, the judgment for defendants must be vacated and the case tried anew with the witnesses present and available to testify.
 
 
 14
 VACATED AND REMANDED.
 
 WIDENER, Circuit Judge, dissenting:
 
 15
 I respectfully dissent.
 
 
 16
 I think the order entered by the magistrate was a perfectly reasonable regulation of his own procedure. Prisoners' cases comprise 26% of the caseload in the Eastern District of Virginia, which is the busiest in the nation with respect to trials completed and the second busiest with respect to weighted filings,[1] so some orderly method of processing and bringing them to trial is necessary. An explicit direction that the plaintiff would furnish (1) "a summary of what he expects each witness to say at the hearing," and (2) "his own statement, under penalty of perjury, that the witness has agreed to testify as set forth," is not hard to understand, and failure to comply with either of those simple directions, I think, justified the magistrate in not arranging for the appearance of those witnesses.
 
 
 17
 The majority does not discuss the fact that the plaintiff was warned in the order that failure to comply with its terms "may preclude the plaintiff from securing the presence of his witnesses at the hearing." So, the plaintiff has no one else to blame for his failure to comply with the simple directions given to him by the magistrate. He was not caught unaware by a technical procedural trap. His difficulty does not depend upon nicety of pleading as in Haines upon which the majority principally relies.
 
 
 18
 Neither does the majority discuss the fact that the magistrate stated from the bench the reason for the ruling: "... the Court calls witnesses, and they say, 'I'm not going to testify,' and no matter what we do, we can't make them." While I think the justification for the pretrial order is self-evident, the magistrate's explanation of that order adds an additional reason to affirm.
 
 
 19
 The Eastern District of Virginia has enforced a simple order, that in this prisoner's Sec. 1983 case filed pro se the plaintiff can at least give the purport of the testimony expected and swear that the witness has agreed to testify as set forth in the application. We now decide that the district courts cannot make such a plaintiff so swear;[2] neither does such a plaintiff have to give the purport of expected testimony. Again, I think we are interfering with the district court's quite reasonable regulation of its own procedure and that the ruling of the magistrate as affirmed by the district court was not an abuse of discretion.
 
 
 20
 I had hoped that, with pretrial orders such as that before us, and similar rules, the days of such plaintiffs furnishing an interesting day's diversion for their friends by requiring them to attend court proceedings were coming to an end. But, now, such is not the case.
 
 
 21
 I would affirm.
 
 
 
 [1]
 The pretrial order provided, in pertinent part:
 
 
 [2]
 Should the plaintiff desire the attendance of any witnesses, he shall notify the Court within ten (10) days from the date hereof. He shall list them by name, in order of importance, setting forth their addresses, and a summary of what he expects each witness to say at the hearing. He shall also attach his own statement, under penalty of perjury, that the witness has agreed to testify as set forth. The plaintiff is advised that, generally, he will be limited to two (2) witnesses. Failure to comply with the terms of this order may preclude plaintiff from securing the presence of his witnesses at the hearing
 
 
 [2]
 In Carter's own words:
 
 
 [2]
 Plaintiff request [sic] that Both Mr. Syvester [sic] Freeman # 28488 and Mr. Levy Jone [sic] # 176052, of the Virginia Department of Corrections be produced at the hearing also by way of writ of habeas corpus. These two witnesses will testify about what they personally viewed as having occured [sic] during the search of plaintiff's cell
 
 
 [3]
 When the trial before the magistrate began, Carter asked if Jones and Freeman were present. The following colloquy ensued:
 THE COURT: They have not been ordered produced, and you need not file further objection other than to say, "They are not here." You requested them. Did you not get a copy of the Court's order on January 7th?
 MR. CARTER: We have been locked down so much, I don't know. I believe I did.
 THE COURT: All right. They are not here, nor is your--Wayne Garrett--he is not here, either. Now, I tell you--
 MR. CARTER: Briefly, could you tell me what was the reason why you--
 THE COURT: Yes.
 MR. CARTER: --denied that motion, sir?
 THE COURT: Yes. You sent the order in on January the 4th, is when we received it. You didn't comply with the pretrial order which required that you set forth what they would say--not in generalities but what they would say--and your oath or affirmation that they would agree to testify if they came to court, and I tell you that the Court calls witnesses and they say, "I am not going to testify," and no matter what we do, we can't make them.
 You are proceeding in forma pauperis, and as a result, that's an expense that the United States would not bear, so the pretrial order contains that requirement. You did not fulfill it; therefore, they will not be here.
 Now, what would they have testified to? Just tell me what they would have said.
 MR. CARTER: They would have testified to the fact that they seen the defendants search our cells and took the pillows and the mattresses and the property was missing as a result of the shakedown on January 8th.
 THE COURT: Well, be more specific and tell me what Mr. Jones would have said.
 MR. CARTER: Sir?
 THE COURT: Tell me exactly what Mr. Jones would have said. Mr. Jones, now.
 MR. CARTER: Oh. Mr. Jones would have said that he saw Officer--Lieutenant Boyd and Officer S.N. Jones remove papers and mattresses and pillows from our cells.
 THE COURT: From both of your cells?
 MR. CARTER: Yes sir.
 THE COURT: And, would he be able to--
 MR. CARTER: This date would be January the 8th of this past year, '82, as a result of that shakedown.
 THE COURT: All right. Now, how about Mr. Freeman?
 MR. CARTER: Mr. Freeman would testify to the same.
 THE COURT: All right. The order will still go, but you now have in the record what they would have said so if you wish to argue on appeal it was error not to have them here, you may do it. You have in the record what they would say.
 
 
 [4]
 The missing materials include Carter's handwritten notes of his trial, the basis of his habeas corpus attack on his conviction
 
 
 [5]
 In the two cases in which we have upheld the denial of a writ of habeas corpus ad testificandum for plaintiff's failure to comply with a pretrial order, the noncompliance was clearly willful. In Smith v. Hartman, 609 F.2d 510 (4 Cir.1979), Smith refused to declare under oath before the magistrate that his proposed witnesses were prepared to give relevant testimony in his behalf, and he repeated his defiance before the district court. Similarly, in Cook v. Bounds, 518 F.2d 779, 780 (4 Cir.1975), the district court advised Cook that he must demonstrate the nature and materiality of the anticipated testimony. Upon Cook's failure to do so, the district court properly declined to issue the writ
 
 
 [1]
 Per judgeship
 
 
 [2]
 As it is not before us, I do not reach, as the majority did not, the question of what would happen if such a plaintiff wanted a witness to testify but was unable to swear that the witness would testify in conformance with the purport of the prospective testimony given to the court