Ronald McKINNEY; Jean Johnson; Juanita Blake; Pat Phillips; Eugene W. Morgan; Ralph Rice; Barbara McKinney, Plaintiffs–Appellants,

v.

BOARD OF TRUSTEES OF MAYLAND COMMUNITY COLLEGE; Virginia Foxx, in her official and individual capacity; Richard L. Muri, in his official and individual capacity; Evelyn B. Dobbin, in her official and individual capacity; Frank H. Fox, in his official and individual capacity; Hal G. Harrison, in his official and individual capacity; Fred O. Hughes, in his official and individual capacity; Ted M. McKinney, in his official and individual capacity; J. Ardell Sink, in his official and individual capacity; Bill J. Slagle, in his official and individual capacity; Saxton Hall Smith, in his official and individual capacity; Barbara Timberman, in her official and individual capacity; J. Todd Bailey, in his official and individual capacity, Defendants–Appellees.

No. 91–1523.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 2, 1991.

Decided Feb. 3, 1992.

John West Gresham, Ferguson, Stein, Watt, Wallas, Adkins & Gresham, P.A., Charlotte, N.C., argued (C. Margaret Errington, on brief), for plaintiffs-appellants.

Michelle Rippon, Van Winkle, Buck, Wall, Starnes & Davis, Asheville, N.C., argued, for defendants-appellees.

Before ERVIN, Chief Judge, HAMILTON, Circuit Judge, and SHEDD, District Judge for the District of South Carolina, sitting by designation.

## OPINION

ERVIN, Chief Judge:

The plaintiffs,[1] former employees of Mayland Community College, which is a part of the North Carolina community college system, sued the defendants in state court alleging that they had been unlawfully discharged because of their political affiliations, or, in the case of Barbara McKinney, for writing a letter critical of how the college selected its president. The defendants removed the case to federal district court and sought summary judgment. After the plaintiffs moved to remand the case to state court, the district court denied the plaintiffs' motion to remand and granted the defendants' motion for summary judgment. The plaintiffs appeal both rulings. For the reasons discussed below, we affirm the denial of the plaintiffs' motion to remand and reverse the granting of the defendants' motion for summary judgment.

---

1. Because there are McKinneys on both sides of the v., to avoid confusion we will refer to the plaintiffs-appellants as "the plaintiffs" rather than by name. For consistency, we will refer to the defendants-appellees as "the defendants."

2. Because Smith was served on May 19, the thirtieth day after he was served was June 18,

## I.

◼ The first issue involves determining whether one of the defendants timely joined in the petition for removal. Under 28 U.S.C. 1446(b), a defendant must petition for removal within thirty days of receiving service of process. If the defendant does not act within thirty days, the case may not be removed. Relevant facts follow, while facts relating to the summary judgment issue are set out in part II of this opinion.

The plaintiffs filed their complaint in the Superior Court of Yancey County, North Carolina, on April 25, 1988. Three of the twelve defendants were served with process the same day. Eight others were served on May 19, twenty-four days later. The first three defendants who were served and seven of the eight others then petitioned for removal on May 25, exactly thirty days after service on the first three defendants.

The one defendant who had been served on May 19 but who did not join in the petition for removal on May 25 was Saxton Hall Smith. Smith was out of town at that time and his attorney had not been able to contact him. A twelfth defendant, Evelyn Dobbin, was served after the petition for removal was filed. She and Smith joined in the petition for removal on June 20.[2] The plaintiffs argue that Smith was required to petition for removal by May 25, thirty days after the first service on any of the defendants. Because he did not, and all served defendants must join in a petition for removal, the plaintiffs argue that the district court should have granted their motion to remand to state court. In rejecting that argument, the district court held that "under Section 1446(b), individual defendants have thirty days from the time they are served with process or with a complaint to join in an otherwise valid removal petition."

which makes it appear that he waited too long to petition for removal. However, June 18, 1988, was a Saturday. Therefore, under the Federal Rules of Civil Procedure, Smith did not have to act until Monday, June 20, 1988 (assuming that he had a full 30 days in which to do so). See Fed.R.Civ.P. 6(a).

*McKinney v. Board of Trustees of May-land Community College,* 713 F.Supp. 185, 190 (W.D.N.C.1989).

Whether the thirty-day limit on removal to federal court begins to run with the first service when there are defendants served on different days is a question of first impression in the Fourth Circuit. In the district court's words, "The issue is whether B has thirty days from the time he himself is served to join the removal petition, or must join within thirty days of A's service." *Id.* at 188. Here, "B" is defendant Smith and "A" is the group of three defendants who were served on April 25.[3]

We begin our analysis with the statutory language. Under 28 U.S.C. § 1446(b):

> The petition for removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading ... or within thirty days after the service of summons upon the defendant....

Section 1446(b) does not address multiple defendants. The district court, in analyzing the statutory language, stated:

> If anything, the use of the word "defendant", singular, seems to refer to notice to the individual defendant, not defendants collectively, nor to whichever one happens to be served first. And Congress was quite capable of using the plural when that is what it meant, as it did in 1441(a)'s reference to "the defendant or defendants". It is as if 1446(b) read, by ellipsis, "... receipt by the defendant in question ...". It would be awkward, and stretching things, to read in "... receipt by the defendant first served."

*McKinney,* 713 F.Supp. at 188–89. While we agree with the district court that reading in "the defendant *first served*" is inappropriate, we are not entirely persuaded by the "Congress was quite capable of using the plural" argument. We also do not

agree with the plaintiffs' contention that the later served defendant should be required to join in the petition for removal within the first served defendant's filing period because removal statutes in general are strictly construed. We believe instead that the statutory language by itself does not answer our question, because section 1446(b) only contemplates one defendant. Therefore, we must resort to other authority to answer our question.

Unfortunately, the legislative history of section 1446(b) does not address the situation where multiple defendants are served on different days. We next examine caselaw from other jurisdictions. There are very few reported cases on point, and only one circuit court has addressed our issue. *Getty Oil Corp. v. Insurance Co. of North America,* 841 F.2d 1254 (5th Cir.1988). *Getty Oil* involved three defendants: Insurance Company of North America (INA), Companies Collective, and NL Industries (NL). INA was served on September 3; Companies Collective was served on September 5; and NL was served on September 24. INA and Companies Collective petitioned for removal on September 26. NL joined in the petition on October 24, which was thirty days after it had received service but fifty-one days after INA was first served. The *Getty Oil* court held that "since the petition must be submitted within thirty days of service on the first defendant, all served defendants must join in the petition no later than thirty days from the day on which the first defendant was served." *Id.* at 1263.

We do not find the *Getty Oil* conclusion to be logical. While the first served defendant clearly must petition for removal within thirty days, section 1446(b) does not imply in any way that later served defendants have less than thirty days in which to act. Although the *Getty Oil* court stated that its rule "promotes unanimity among the

---

**3.** In a different situation, where B is served *more than* 30 days after A is served, two timing issues can arise, and the law is settled as to each. First, if A petitions for removal within 30 days, the case may be removed, and B can either join in the petition or move for remand.

See 28 U.S.C. § 1448. Second, if A does *not* petition for removal within 30 days, the case may not be removed. *See, e.g., Quick Erectors, Inc. v. Seattle Bronze Corp.,* 524 F.Supp. 351, 354 (E.D.Mo.1981).

defendants," *id.,* "unanimity" appears to be an inappropriate word choice. Rather, in establishing one fixed deadline for defendants served as much as thirty days apart, a better term for what the *Getty Oil* rule could lead to is "inequity." We do not think that Congress, in providing for removal to federal court, intended to allow inequitable results. Nor do we believe that it is appropriate for a court to add a word to a statute, as the *Getty Oil* opinion does by in effect inserting "first" before "defendant."

The plaintiffs cite three other reported decisions on point, all of which agree with the rule in *Getty Oil: Varney v. Johns-Manville Corp.,* 653 F.Supp. 839 (N.D.Cal. 1987); *Godman v. Sears, Roebuck and Co.,* 588 F.Supp. 121 (E.D.Mich.1984); *Schmidt v. National Organization for Women,* 562 F.Supp. 210 (N.D.Fla.1983). In addition, a recent opinion from the District of Maryland cites the *Getty Oil* rule favorably in dicta. *Johnson v. Baltimore City Police Dept.,* 757 F.Supp. 677, 679 (D.Md.1991). The facts in *Johnson* were different from those in *Getty Oil* and our case. In *Johnson,* there were five defendants. All were served between October 19 and October 23. The defendants all petitioned for removal on December 4, forty-six days after the first defendant was served. Therefore, unlike *Getty Oil* and our case, there was no otherwise valid petition for removal, and *Johnson* does not plainly contradict the district court's holding in our case.

Of course, *Getty Oil* and the few district court decisions on point are only persuasive authority to this court. Because we are unpersuaded, we look next to policy concerns. The main policy concern the plaintiffs cite is that a plaintiff is entitled

> to know within a prescribed period of time whether the case will proceed in state or federal court. Procedural, calendaring, discovery, and other rules in various state courts differ from those in federal court and the plaintiffs who have

legitimately made the decision to pursue their action in an appropriate state court are entitled to know at the earliest possible date if their choice of forum is going to be defeated by the defendants.

Plaintiffs' Brief at 12 (citation omitted). We see two problems with applying that reasoning to our issue. First, if plaintiffs want to know which court they will be in "at the earliest possible date," they need only to make sure that all defendants are served at about the same time. Here, eight defendants were served twenty-four days after the first three defendants were served. If they had been represented by different counsel, making communication more difficult, it is possible that more than one would not have joined in the petition for removal by May 25.[4] In addition, the twelfth defendant, Evelyn Dobbin, was served *after* the first defendants petitioned for removal. Presumably, the plaintiffs knew that the defendants served before May 25 might petition for removal and that Dobbin would then have the right to move to remand the case back to state court. *See* 28 U.S.C. § 1448. Thus, in this case, it does not appear that the plaintiffs wanted to know which court they would be in "at the earliest possible date."

■ Second, the plaintiffs' policy concern only looks at forum selection from a plaintiff's point of view, assuming that there is something inherently bad about removal and "defeating" the plaintiff's choice of forum. To the contrary, by providing for removal in the first place, Congress seems to believe that the defendant's right to remove a case that could be heard in federal court is at least as important as the plaintiff's right to the forum of his choice.

Rather than favoring plaintiffs or defendants, we agree with the district court that the removal procedure is intended to be "fair to both plaintiffs and defendants alike." *McKinney,* 713 F.Supp. at 189. The rule that the plaintiffs advance would

---

4. As of May 19, the same attorney represented all of the defendants. It is not clear from the parties' briefs or the record if that attorney represented any of the defendants before May 19.

make it possible for a great injustice to take place. In the district court's words:

> [U]nder the view urged by plaintiffs here, the rights of defendants generally could be rather easily overcome by tactical maneuvering by plaintiffs. Suppose, for example, plaintiff serves defendant A, thus starting the thirty-day period running, and then maneuvers to serve defendant B late on the thirtieth day. Obviously B is unlikely to rush to the courthouse door before it closes to file his joinder of A's removal petition; he is unlikely to even realize what is happening to him before it is too late. (There is nothing on the summons form such a defendant would receive—which of course would be a summons to state, not federal, court—that would tell him the rules for removal to federal court, or warn him that he might have much less than thirty days to join in a removal petition). This cannot be what Congress had in mind. Congress created the removal process to protect defendants. It did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it.

*Id.* Although we certainly do not suggest that the plaintiffs here were consciously attempting to prevent removal, the rule they urge would allow such tactics.

Finally, we consider another policy concern, which was not present when *Getty Oil* and the other decisions on point were decided. In 1988, Congress amended section 1446(a) to make petitions for removal subject to Rule 11 of the Federal Rules of Civil Procedure. Judicial Improvements and Access to Justice Act, Pub.L. No. 100–702, § 1016(b), 102 Stat. 4669 (1988). As amended, section 1446(a) is further reason to allow all defendants a full thirty days to investigate the appropriateness of removal. Otherwise, later served defendants will either have to forego removal or join hurriedly in a petition for removal and face possible Rule 11 sanctions. Congress surely did not intend to impose such a Hobson's choice on later served defendants.

For the reasons stated above, we hold that under 28 U.S.C. § 1446(b), individual defendants have thirty days from the time they are served with process or with a complaint to join in an otherwise valid removal petition. Accordingly, we affirm the judgment of the district court on the removal issue.

## II.

■ Turning to the summary judgment issue, we first review the legal standards to be applied. Summary judgments are appropriate in those cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In other words, summary judgments should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not necessary to clarify the application of the law. *Charbonnages De France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950). Summary judgments are reviewed *de novo* on appeal. *Higgins v. E.I. Du Pont de Nemours & Co.*, 863 F.2d 1162, 1166–67 (4th Cir.1988); *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1127–28 (4th Cir.1987). Finally, the court must view any permissible inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986).

■ The plaintiffs have alleged that their contracts were not renewed because of either their political affiliation or their statements criticizing Mayland. In such a case, plaintiffs have the burden of showing that their conduct was constitutionally protected and that their conduct was a substantial factor in their employer's decision not to rehire them. If the plaintiffs carry their burden, the employer may defend its action by showing by a preponderance of the evidence that it would have reached the same decision in the absence of the protected conduct. *Mt. Healthy City Bd. of*

*Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

██ We next set out the facts relevant to the plaintiffs' claim in the light most favorable to the plaintiffs. Virginia Foxx became President of Mayland Community College in January 1987. Foxx was a Republican whose previous position was an appointive office in Raleigh to which Governor Martin, also a Republican, appointed her. Three of the defendant trustees, all Republicans, had successfully lobbied for her selection at Mayland. Before their efforts, Foxx was not high on the list of candidates. At the time of her selection, nine of the twelve trustees at Mayland were Republicans. Defendant trustee Bill Slagle, a Republican county commissioner in Mitchell County, looked up the political affiliation of Mayland's employees and repeatedly said that too many of them were Democrats. Another Republican trustee, defendant Ted McKinney, said several times that the Republicans planned to fire all the Democrats at Mayland.

At a board of trustees meeting in April 1987, Foxx recommended that the board not renew the contracts of nine administrators and faculty members. All nine were Democrats. Foxx then recommended the nonrenewal of a tenth employee, Barbara McKinney. Barbara McKinney had written a letter criticizing the process that led to the selection of Foxx. The trustees had been visibly angered when they read McKinney's letter at an earlier board meeting.[5] The board then voted not to renew the contracts of all ten employees. Afterwards, defendant Slagle said that the Democrats had gotten what they deserved.

The trustees did not follow Mayland's usual procedures for dismissing the ten employees, and their dismissal caused a considerable controversy in the community. On May 18, 1987, the board voted to rescind its earlier decision. Foxx then began to meet individually with the employees, as

Mayland's policy on nonrenewal called for. However, she did not meet with three of them. When she met with plaintiff Ronald McKinney, Foxx broke down and cried, telling McKinney that she was having to make decisions that were not of her choosing and that her decision did not reflect on McKinney personally.

At the next board meeting, Foxx recommended that the same employees not be renewed.[6] The board followed her recommendation. Later, after Republicans in the community expressed strong support for one of the fired employees, Sandra Lusk, she was rehired. In addition to the above evidence of the trustees' political motivation, the plaintiffs also presented evidence that the performance of at least some of the employees had never been criticized, Mayland's budget increased during the period when the defendants claim that there was a budget crisis, Foxx's reorganization plan that supposedly necessitated the firings was a sham, and Foxx and the trustees repeatedly did not follow Mayland's employment procedures.

After reviewing the record *de novo,* we believe that the plaintiffs have carried their burden of showing that their protected conduct may have been a substantial factor in the trustees' employment decision. In finding that the trustees would have made the same decision in the absence of the plaintiffs' protected conduct, the district court seems to have drawn several inferences in the *defendants'* favor. For example, the district court explained away defendant Slagle's apparent political motivation by noting that he was not present at the April board meeting. However, the plaintiffs argue that the trustees at that meeting may have just rubberstamped an already formed plan, and Slagle was present at the later board meeting at which the nonrenewals were actually implemented. The district court also found that Mayland was in

---

5. It appears from the plaintiffs' reply brief that Barbara McKinney was also a registered Democrat at the time her contract was not renewed, although until that brief was filed the parties believed that she was a registered Republican at the time of her nonrenewal.

6. In the month since the first board vote, one of the employees had become no longer subject to nonrenewal, so Foxx recommended the firing of nine employees at the second meeting.

the midst of a budget crisis at the time of the nonrenewals, although there is conflicting evidence on that point. In addition, the district court completely ignored two pieces of potentially incriminating evidence: (1) defendant Ted McKinney's statement that the Republicans were planning to fire Mayland's Democratic employees, and (2) Foxx's breakdown before plaintiff Ronald McKinney and statement to him that she was having to make decisions not of her choosing. Viewing the evidence in its entirety, we agree with the plaintiffs that it is possible that Foxx's reorganization plan was pretextual. Finally, it is not dispositive that Mayland has improved since the dismissal of the plaintiffs, with attendance and other measures of success up. That improvement alone does not show that these firings were properly motivated. In making these several inferences in the defendants' favor, the district court failed to adhere strictly to the legal standard appropriate to motions for summary judgment.

Of course, the defendants may win at trial. There may have been perfectly acceptable reasons for not renewing the plaintiffs' contracts. The plaintiffs' positions were mostly eliminated or filled by other Democrats. George Fouts, who was the interim president before Foxx took over and apparently non-partisan, recommended that most of the plaintiffs not be renewed. However, despite these facts, there were far too many suspicious aspects about the nonrenewals to rule in the defendants' favor as a matter of law. We therefore reverse the granting of the defendants' motion for summary judgment and remand the case to the district court for proceedings not inconsistent with this opinion.

Accordingly, the judgment of the district court is hereby

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

HAMILTON, Circuit Judge, concurring specially:

I concur in Part I of the majority opinion.

There is a line to be drawn between reasonable inferences and mere speculation. While I do not agree with the "rea-sonableness" of the inferences drawn in favor of plaintiffs by the majority opinion in Part II, due to the limited nature of summary judgment, I will not dissent.