**Victor George BRYANT,**
**Plaintiff–Appellee,**

v.

**William R. MUTH;  Gregg Robbins,**
**Defendants–Appellants.**

· **No. 91–6672.**

United States Court of Appeals,
Fourth Circuit.

Argued March 30, 1993.

Decided May 24, 1993.

Rudolf A. Renfer, Jr., Asst. U.S. Attorney/Chief, Civ. Div., Raleigh, NC, argued (Margaret Person Currin, U.S. Atty., on brief), for defendants-appellants.

Genevieve M. Kelly, Student Counsel, Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, DC, argued (Steven H. Goldblatt, David B. Goodhand, Supervising Atty., on brief), for plaintiff-appellee.

Before RUSSELL and NIEMEYER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

## OPINION

CHAPMAN, Senior Circuit Judge:

Prison officials William R. Muth ("Muth") and Gregg Robbins ("Robbins") are appealing the district court's order denying their motion for summary judgment and finding that they were not entitled to qualified immunity for the confiscation of inmate Victor George Bryant's legal materials created with the unauthorized use of prison computers and stored on contraband computer disks. We disagree, reverse, and grant the defendants' motion for summary judgment finding that they are entitled to qualified immunity.

I

On November 13, 1987, prison officials at the Federal Correctional Institute in Butner, North Carolina ("FCI Butner") confiscated three computer disks from inmate Victor George Bryant ("Bryant"). The disks were confiscated because prison officials believed they were contraband, as their possession was not authorized, and that Bryant had stolen them from the prison's Education Department.[1] Officials also believed that the disks contained legal work obtained through unauthorized use of the Education Department's computers in violation of the prison's computer policy.

It is undisputed that Bryant was not authorized to use the prison computers. As a result, Bryant was in "possession of anything not authorized" in violation of Bureau of Prison ("BOP") Policy Statement 1237.6.[2] It should be noted that, pursuant to BOP Policy Statement 1237.6, Bryant could have applied for written permission from the prison's Chief Executive Officer to use the computers to create his legal work.

■ A few days after the disks were confiscated, Bryant was given a hearing at the

---

1. The prison officials observed that, unlike disks authorized for use on the prison computers, Bryant's disks lacked an etched serial number. Unetched disks may only be used on the prison computers with the direct supervision of prison staff.

2. Paragraph 12 of BOP Statement 1237.6, dated December 6, 1985, states in pertinent part:

   d. *Inmate use of Microcomputer Resources.* Access and use of any computer resource by inmates must be carefully monitored and controlled to prevent misuse, fraud or abuse. While inmates may have access to microcomputers for vocational training, educational or FPI programs, no other access or use of computers is permitted except as indicated below. Specific rules as they relate to inmates are as follows:

   . . . .

   5. [I]nmates may not be permitted the use of computer equipment for ... legal work without specific written authority on an individual case from the CEO [Chief Executive Officer]....

   6. [D]isks or tapes, if provided, remain the property of the institution and may not be permitted as approved personal property.

prison during which he claimed that the disks were a gift from fellow inmate Richard Lopez. Lopez stated that he had gotten them from an instructor who had brought them from home. Whether the disks were government property or a gift from inmate Lopez, Bryant was not authorized to possess the disks.[3] The BOP regulations specifically state:

A claim of ownership may not be accepted for an item made from the unauthorized use of government property. Items obtained from another inmate ... without staff authorization may be considered nuisance contraband for which a claim of ownership is ordinarily not accepted.

28 C.F.R. § 553.13(b)(2)(ii). Therefore, under BOP regulations the disks were "contraband"[4] and subject to seizure and confiscation by prison officials.[5]

Two of the three confiscated disks were used by Bryant to create and store legal materials for his appeals. The third disk contained a program used by Bryant to circumvent the access restrictions on the prison computers.[6] Because he could not access the prison computers without this third disk, Bryant was fully aware that his use of the computers was unauthorized.

· Bryant alleges that the two disks were used to store his legal materials and contained a year's work he had done in preparation of various post-conviction appeals. Specifically, the disks contained Bryant's memories and recollections of court transcripts, the circumstances surrounding his arrest and a draft of his Motion to Vacate Conviction under Title 28 U.S.C. § 2255.

At the time the disks were confiscated, appellant Muth was the Supervisor of Education and appellant Robbins was a computer instructor at the prison. The day after the disks were seized, they were turned over to appellant Muth. In conformity with BOP regulations Muth treated the disks as contraband and ordered appellant Robbins to reformat them.[7] The disks were not reformatted, however, and none of Bryant's legal materials stored on the disks were destroyed.

Two weeks after his disks were seized, Bryant requested a hardcopy of the legal work stored on the disks. Bryant told Muth that the disks contained a year's legal work and that retrieving the data was critical to contest his threatened extradition to England and to pursue other post-conviction remedies. Although Robbins believed that the disks were contraband, that the prison computers were used in violation of prison rules, and that Bryant was not entitled to a printout of any of the contents of the computer disks, at Muth's direction, Robbins gave Bryant an

---

**3.** 28 C.F.R. § 553.10 outlines the type of property that may be possessed by an inmate. It states:

It is the policy of the Bureau of Prisons that an inmate may possess only that property which the inmate is authorized to retain upon admission to the institution, which is issued while the inmate is in custody, or which the inmate purchases in the institution commissary, or which is approved by staff to be mailed to, or· otherwise received by an inmate....

28 C.F.R. § 553.10 (1992).

**4.** 28 C.F.R. § 553.12(a) defines "contraband" materials:

Staff shall consider an item possessed by an inmate to be contraband unless the inmate was authorized to retain the item upon admission to the institution, the item was issued by authorized staff, purchased by the inmate from the commissary, or purchased or received through approved channels....

28 C.F.R. § 553.12(a) (1992).

**5.** 18 U.S.C. § 4012 authorizes prison officials to seize prison contraband. It states:

An officer or employee of the Bureau of Prisons may, pursuant to rules and regulations of the Director of the Bureau of Prisons, summarily seize any object introduced into a Federal penal or correctional facility or possessed by any inmate of such a facility in violation of a rule, regulation or order promulgated by the director, and such object shall be forfeited to the United States.

18 U.S.C. § 4012 (1988).

**6.** In order to access the prison computers, one needs both a disk to store data and a disk to access the internal computer program in the computer terminal. This is a safeguard to control use of computers by inmates for unauthorized purposes. In order to maintain security in the prison computer system, disks used to access the computer system are controlled by the prison staff.

**7.** 28 C.F.R. § 553.13(a) authorizes prison staff to seize contraband in the possession of an inmate. 28 C.F.R. § 553.13(b) delineates the manner in which prison officials may dispose of seized contraband materials.

edited hard-copy totalling approximately one-third of the disks' contents.

On March 16, 1988, Bryant filed a *pro se* request for an injunction and temporary restraining order ("TRO") to prohibit the reformatting of his disks. On March 25, 1988, the district court entered an *ex parte* injunction preventing the disposal or alteration of the contraband disks.

On April 1, 1988, prison officials presented Bryant with what they believed to be a complete printout of his legal materials. The task of retrieving the materials from Bryant's confiscated computer disks was difficult and time consuming for several reasons. First, Bryant's disks were not formatted for use on the IBM-compatible disks used for computer instruction at the prison. Instead, Bryant had formatted them for use on TRS-80 computers which were located at the back of the prison computer classrooms. This meant that Robbins could only attempt to retrieve data when he was actually in the FCI Butner computer classrooms. Robbins held two other jobs in addition to his job as a computer instructor at the prison. Therefore, he could only retrieve data from Bryant's disks during classroom teaching hours.

Second, Bryant had stored the materials on his disks in such a way that even Robbins, an experienced computer instructor, could not retrieve them without Bryant's assistance. According to Robbins, in addition to formatting the disks for use on TRS-80 computers, Bryant had also placed "an entirely different set of initialization programs on the data disks themselves, which made it possible to read the disks." In addition, Bryant had created directories on his disks in such a way that it appeared the data on both disks was identical. Therefore, when the complete contents of one of the disks was given to Bryant on April 1, 1988, prison officials believed that Bryant had received a printout of all his legal materials.

Finally, the volume of materials stored on Bryant's disks was enormous. It took more than three hours of continuous printing to provide Bryant with a hard-copy of the materials stored on all the contraband computer disks.

On April 6, 1988, the district court held that, because it was written on a form used by prisoners for civil rights complaints, Bryant's request for an injunction constituted a complaint against Muth and Robbins individually. On July 18, 1988, the defendants filed motions to dismiss and for summary judgment.

On November 29, 1988, the district court granted the defendants' motion to dismiss and for summary judgment. The court held that Bryant's "constitutional right of reasonable access to court entitles him to the complete printout of his legal material. *Carter v. Hutto,* 781 F.2d 1028 (4th Cir.1986)." The court found, however, that because Bryant had received a complete printout of his legal materials on April 1, he had no further constitutional claim.

On December 22, 1988, Bryant filed a motion for reconsideration claiming that the printout he received on April 1 was not a complete printout of all of his legal materials. On February 13, 1989, the district court held that, because the prison officials had mistakenly believed the two disks were duplicate copies of each other, the printout Bryant received on April 1, only represented the contents of one disk. On March 6, 1989, the court struck its December 1, 1988 order, which had dismissed Bryant's earlier claims, and reinstated Bryant's complaint.

Bryant received a complete copy of all the legal materials contained on all of the contraband disks on July 19, 1989. On August 1, 1989, Muth and Robbins again moved to dismiss Bryant's complaint.

On August 14, 1989, Bryant moved to amend his complaint to include claims for monetary damages from Muth and Robbins on the grounds that they illegally confiscated, reformatted, and mutilated the contents of the contraband computer disks. Bryant claims that the materials stored on the confiscated computer disks were necessary for him to conduct his post-conviction proceedings and by refusing to provide him with a complete hard-copy of the contents for approximately 21 months, Muth and Robbins denied him access to the courts in violation of his clearly established constitutional right.

By Order dated November 13, 1989, the court allowed Bryant to amend his complaint and denied the defendants' motion to dismiss filed on August 1.

On May 3, 1990, Muth and Robbins moved for summary judgment on the ground that they were entitled to qualified immunity under *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The district court held that Muth and Robbins were not entitled to qualified immunity and that, even though Bryant had no constitutional right to possess the contraband disks, he did have a clearly established constitutional right to the legal materials on the disks.

Muth and Robbins appeal contending that they are entitled to qualified immunity for two reasons: First, they followed established BOP procedures in confiscating Bryant's contraband computer disks and second, Bryant does not have a constitutional right to the legal materials stored on the contraband disks because they were created with the unauthorized use of the prison computers.

## II

This court reviews a district court's grant or denial of a motion for summary judgment *de novo. McKinney v. Board of Trustees of Mayland Community College,* 955 F.2d 924, 928 (4th Cir.1992).

A district court's denial of a defendant's claim of qualified immunity is an appealable final decision. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). Therefore, jurisdiction is proper under 28 U.S.C. § 1291.

The issue presented in this appeal is whether prison officials are entitled to qualified immunity for confiscating a prisoner's legal materials created with the unauthorized use of prison computers and contained on contraband computer disks.

### Qualified Immunity

A defendant sued under 42 U.S.C. § 1983 may assert a defense of qualified immunity. The Supreme Court stated in *Harlow v. Fitzgerald:*

[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

457 U.S. at 818, 102 S.Ct. at 2738.

■ Qualified immunity is an affirmative defense. Therefore, it must be pleaded by the defendant official. *Id.* at 815, 102 S.Ct. at 2736. Once the defendant raises a qualified immunity defense, the plaintiff carries the burden of showing that the defendant's alleged conduct violated the law and that such law was clearly established when the alleged violation occurred. *Dixon v. Richer,* 922 F.2d 1456, 1460 (10th Cir.1991). In order to defeat a defense of qualified immunity:

The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citations omitted).

This Court has held that to defeat a defense of qualified immunity, the plaintiff must demonstrate that, in light of pre-existing law, the unlawfulness of the official action was apparent. *Mitchell v. Rice,* 954 F.2d 187, 190, *cert. denied,* —— U.S. ——, 113 S.Ct. 299, 121 L.Ed.2d 222 (1992).

■ The subjective belief or motive of a government official is irrelevant to the issue of qualified immunity. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039; *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Instead, the inquiry focuses on what a reasonable official in the same position would have believed.

### The Constitutional Right of Access to the Courts

■ It is well settled that prisoners have a constitutional right of access to the courts. *Ex Parte Hull,* 312 U.S. 546, 548–49, 61 S.Ct. 640, 641, 85 L.Ed. 1034 (1941); *Hudspeth v. Figgins,* 584 F.2d 1345, 1347 (4th Cir.1978),

cert. denied, 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386 (1979); *Blanks v. Cunningham*, 409 F.2d 220, 221 (4th Cir.1969). This Court has held that the destruction or unreasonable seizure or tampering with important legal materials is an unconstitutional interference with a prisoner's right of access to the courts. *Carter v. Hutto*, 781 F.2d 1028, 1032 (4th Cir.1986); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir.1975).

The facts of this case, however, differ from those in *Carter* and *Oxendine*. In *Carter*, while conducting a search of an inmate's cell, prison officials seized and destroyed legal materials relating to his application for a writ of habeas corpus. The destroyed materials included the inmate's handwritten notes of his trial which were the basis of the habeas corpus attack on his conviction, *Carter*, 781 F.2d at 1032, and we held that the destruction of handwritten legal materials was a violation of the inmate's clearly established constitutional right of access to the courts. *Id.* In *Oxendine*, this Court held that the confiscation of legal materials and the denial of writing supplies could constitute an unreasonable interference with an inmate's access to the courts. *Oxendine*, 509 F.2d at 1405.

Unlike the inmates in *Carter* and *Oxendine*, Bryant chose not to create his legal materials by writing or typing, or getting written authorization to use a prison computer. Instead, he violated established prison regulations by creating his materials from the knowingly unauthorized use of the prison computers. Instead of paper, Bryant recorded his legal materials on contraband computer disks.

Muth and Robbins had authority pursuant to 28 C.F.R. § 553.13 to seize and confiscate Bryant's contraband computer disks. Bryant's legal materials contained on these contraband disks were created through unauthorized use of the prison computers. Therefore, unlike the legal materials in *Carter* and *Oxendine*, under BOP regulations, Bryant's legal materials composed and stored on disks were contraband.

### Qualified Immunity as Applied to the Confiscation of Bryant's Legal Materials

■ The district court held that Muth and Robbins were not entitled to qualified immu-

nity because, even if they were authorized to confiscate the disks, they should have known that Bryant was entitled to the legal materials stored on them. *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. This finding is based on the courts earlier conclusion in its Order filed on December 1, 1988, that under *Carter*, Bryant's constitutional right of access to the courts entitled him to a complete printout of the legal materials stored on the contraband disks.

The district court failed to distinguish the facts in this case from those in *Carter* and *Oxendine*. Had Muth and Robbins confiscated Bryant's legal materials, legally prepared and retained, there is no question that they would not be entitled to qualified immunity. Unlike the inmates in *Carter* and *Oxendine*, however, Bryant chose to create his legal papers in a manner which violated established prison rules and regulations.

Bryant had no right to any materials, placed without authority and in violation of BOP regulations, on contraband computer disks. Therefore, Muth and Robbins followed correct BOP procedure when they confiscated both Bryant's contraband computer disks and the materials stored on them.

Bryant was not permanently denied his legal materials. Rather, access to his legal materials was delayed while prison officials attempted to retrieve the data from the seized disks. Furthermore, as discussed above, much of the delay in retrieving Bryant's data was due to their voluminous nature and the unusual manner in which Bryant had stored the materials. Bryant has not been denied his constitutional right of access to the courts.

Bryant knowingly and willingly chose not to create his legal materials with a pencil, a typewriter, or the authorized use of a prison computer. Rather, he chose to willingly and knowingly create his materials with the unauthorized use of prison computers in violation of prison rules. To hold that he has a constitutional right to these materials would allow him to benefit from the fruits of his unauthorized activity.

In this case, Bryant used the prison computers to perform legal research and word processing, but the potential for abuse is immense. Society is becoming increasingly dependent upon computers in virtually every aspect of daily life. Prisons are no exception. In the future, an inmate engaging in the unauthorized use of prison computers could learn to access prison records and computer monitored security systems. Unauthorized inmate access to computers linked with computers outside the prison could create even greater chaos. It is therefore imperative that the rules pertaining to inmate use of prison computers be vigorously enforced.

In confiscating Bryant's computer disks, Muth and Robbins were carrying out the clear language of the BOP Manual. Under *Harlow*, they may not be held to the standard of constitutional lawyers. Their actions did not violate any "clearly established statutory or constitutional rights to which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. Therefore, they are entitled to qualified immunity.

For the reasons stated above, the order of the district court is reversed and the defendants' motion for summary judgment is granted.

REVERSED AND REMANDED WITH DIRECTIONS TO ENTER JUDGMENT FOR DEFENDANTS.