28 F.3d 1212
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Thomas James Van DEUSEN, Plaintiff-Appellant,
v.
Parker EVATT; Sammie D. Brown; Martha Wannamaker; Ronnie
A. Grate, Defendants-Appellees.
 No. 93-6314.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 11, 1994.
Decided June 20, 1994.
 
 Appeal from the United States District Court for the District of South Carolina, at Spartanburg. G. Ross Anderson, Jr., District Judge. (CA-92-1170-7)
 Argued: William Clifford Wood, Jr., Nelson, Mullins, Riley & Scarborough, Columbia, SC, for Appellant.
 Argued: W. Howard Boyd, Jr., Gibbes & Clarkson, P.A., Greenville, SC. On brief: Edwin P. Martin, Jr., Ronald K. Wray, II, Gibbes & Clarkson, P.A., Greenville, SC, for Appellees.
 D.S.C.
 AFFIRMED IN PART AND VACATED AND REMANDED IN PART
 Before WILKINSON and HAMILTON, C.J., and BUTZNER, Sr. C.J.
 OPINION
 PER CURIAM:
 
 
 1
 In this case an inmate who has been released from prison seeks to maintain an action against prison officials based on alleged constitutional violations committed while he was incarcerated. We hold that the prisoner's release moots his claims for injunctive and declaratory relief, and that the prison officials are entitled to qualified immunity in his suit for damages under 42 U.S.C. Sec. 1983. Accordingly, we affirm the district court's grant of summary judgment as to the damages claim, and we direct that the claims for equitable relief be dismissed as moot.
 
 I.
 
 2
 Appellant Thomas J. Van Deusen pleaded guilty to the charge of involuntary manslaughter in May of 1991. Van Deusen, who was twenty-two years old at the time of sentencing, consented to sentencing under the South Carolina Youthful Offender Act ("SCYOA"). See S.C.Code Ann. Sec. 24-19-50(c). In accordance with the Act's provisions, Van Deusen was sentenced to an indeterminate period of one to six years. Under guidelines established by South Carolina's Youthful Offender Review Board, Van Deusen could not be conditionally released, i.e., paroled, until he had served at least 24 months of his sentence.
 
 
 3
 In June 1991, Van Deusen was assigned to the Dutchman Correctional Institution after being classified as a medium custody inmate. Dutchman is a minimum-medium custody facility designated for the incarceration of inmates sentenced under the SCYOA. Approximately one year later, in April 1992, Van Deusen initiated this action against several South Carolina prison officials, alleging numerous violations of his constitutional rights. Van Deusen's principal claim was that he was being denied a protected liberty interest by being housed in a medium-security setting. Van Deusen claimed that, under Sec. 24-19-60 of the SCYOA, prison officials were required to place him in a minimum security facility. Section 24-19-60 states:
 
 
 4
 Youthful offenders shall undergo treatment in minimum security institutions, including training schools, hospitals, farms, forestry and other camps, including vocational training facilities and other institutions and agencies that will provide the essential varieties of treatment.
 
 
 5
 The director, as far as is advisable and necessary, shall designate, set aside and adopt institutions and agencies under the control of the department and the division for the purpose of carrying out the objectives of this chapter. The director may further maintain a cooperative program with the Department of Vocational Rehabilitation involving the operation of reception and evaluation centers, utilizing funds and staffing services of the department which are appropriate for matching with Federal Vocational Rehabilitation funds.
 
 
 6
 Insofar as practical and to the greatest degree possible, such institutions, facilities and agencies shall be used only for the treatment of committed youthful offenders, and such youthful offenders shall be segregated from other offenders, and classes of committed youthful offenders shall be segregated according to their needs for treatment.
 
 
 7
 Van Deusen similarly claimed that his due process rights were being violated because he was not segregated from the general prison population and because he was being denied the treatment required under Sec. 24-19-60. He also alleged several equal protection violations. Van Deusen sought injunctive and declaratory relief as well as money damages.
 
 
 8
 On January 15, 1993, a magistrate judge recommended that the prison officials be awarded summary judgment on all of Van Deusen's claims. The district court awarded defendants summary judgment in February 1993. Van Deusen then appealed. Subsequently, on April 29, 1993, Van Deusen was conditionally released from the Department of Corrections' custody, and he is no longer confined in one of the Department's institutions. Van Deusen was scheduled to be unconditionally released on May 28, 1994.
 
 II.
 
 9
 Van Deusen's release from prison during the pendency of this appeal renders moot his claim for injunctive and declaratory relief. It is well settled that to maintain an action against public officials, a plaintiff "must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct." City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983) (citing Golden v. Zwickler, 394 U.S. 103, 109-10 (1969)). When a prisoner is released from prison, there is no longer a " 'substantial controversy' " between the former inmate and prison officials " 'of sufficient immediacy and reality' " to warrant the issuance of either injunctive or declaratory relief. Inmates v. Owens, 561 F.2d 560, 562 (4th Cir.1977) (quoting Golden, 394 U.S. at 108); see also Scher v. Chief Postal Inspector, 973 F.2d 682, 683 (8th Cir.1992); Clay v. Miller, 626 F.2d 345, 347 (4th Cir.1980) (per curiam).* Accordingly, we grant appellees' motion to dismiss Van Deusen's claims for injunctive and declaratory relief based on his allegedly improper treatment while in prison.
 
 III.
 
 10
 We are left to consider only Van Deusen's claim for money damages under 42 U.S.C. Sec. 1983. The district court properly awarded summary judgment to appellees on this claim because the prison officials are protected against such damages here by their qualified immunity from suit under Sec. 1983. See Procunier v. Navarette, 434 U.S. 555, 561 (1978); Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir.1993).
 
 
 11
 The Supreme Court has explained that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This qualified immunity from suit is necessary to avoid the social costs of repetitive claims against public officials, including "the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." Id. at 814. An official's qualified immunity is not easily forfeited, and "it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).
 
 
 12
 The objective inquiry necessary to assess an official's qualified immunity defense requires a court to determine whether that official "could reasonably have ... thought [his actions] consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987); see also Taylor v. Farmer, 13 F.3d 117, 120 (4th Cir.1993). Therefore, in order for a public official to lose the protection of his qualified immunity, there must be a clearly established right at issue, and a reasonable person in the officer's position must have known he was violating that right. See Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir.1992). In the case before us, we can say neither that the rights alleged by Van Deusen were clearly established nor that reasonable people in the place of appellees would have known they were acting in violation of them.
 
 
 13
 First, although we need not address the merits of Van Deusen's claim that SCYOA Sec. 24-19-60 gives rise to protected liberty interests including the right to minimum-security incarceration, we do note that no court has held that the statute does create such rights. In fact, both the district court and magistrate judge concluded in this case that the statute did not create a protected liberty interest in minimum-security incarceration. Similarly, we recognize that much of the statute's language, including the introductory phrases to the latter two paragraphs, accords a good deal of discretion to the Department of Corrections. Terms such as "as far as is advisable and necessary" and "[i]nsofar as practical and to the greatest degree possible" are generally insufficiently mandatory to create a protected interest. As a result, it would be impossible to hold that the rights Van Deusen relies upon were in any way "clearly established" at the time of his incarceration.
 
 
 14
 Second, it is equally difficult to show that reasonable persons acting as prison officials would have been aware that they were violating Van Deusen's alleged rights. The Supreme Court has repeatedly held "both that prison officials have broad administrative and discretionary authority over the institutions they manage and that lawfully incarcerated persons retain only a narrow range of protected liberty interests." Hewitt v. Helms, 459 U.S. 460, 467 (1983). The Court has explained that this "broad discretionary authority is necessary because the administration of a prison is 'at best an extraordinarily difficult undertaking.' " Id. at 467 (quoting Wolff v. McDonnell, 418 U.S. 539, 566 (1974)); see also Meachum v. Fano, 427 U.S. 215, 225 (1976). Thus, the prison officials in this case acted with the knowledge that they have wide latitude in the management of their facilities. Indeed, South Carolina officials were recently told by this court that their state's prisoner classification scheme does not create a protected liberty interest in an individual prisoner's classification. See Slezak v. Evatt, --- F.3d ----, No. 92-6864 (4th Cir. Apr. 14, 1994), 1994 WL 125094. While Slezak did not concern the classification of prisoners under the SCYOA, that decision once again indicated the degree of discretion that prison officials enjoy in managing the inmate population.
 
 
 15
 Even if Van Deusen could establish that Sec. 24-19-60 creates a protected liberty interest in minimum-security incarceration for youthful offenders, it cannot be shown that such a right was clearly established when he was incarcerated or that South Carolina prison officials acted unreasonably in failing to recognize such a right. Accordingly, the appellees have properly asserted their qualified immunity as a defense against money damages in this case, and the district court properly awarded summary judgment to the prison officials on Van Deusen's claim for damages.
 
 IV.
 
 16
 For the foregoing reasons, the judgment of the district court with regard to plaintiff's claims for money damages is affirmed. With regard to plaintiff's equitable claims, the judgment of the district court is vacated and the case remanded with directions to dismiss those claims as moot.
 
 
 17
 AFFIRMED IN PART; VACATED AND REMANDED IN PART
 
 
 
 *
 The fact that Van Deusen had been only "conditionally released" before May 28 would not sustain the case or controversy. This is so for several reasons. First, Van Deusen would have been subject to reincarceration only if he had violated the terms of his conditional release as established in his Conditional Release Certificate. Thus, it was Van Deusen's own behavior which would determine whether he was unconditionally released on May 28. Second, the possibility that a paroled inmate might be returned to prison is not sufficient to generate an immediate "case or controversy." See McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir.1984) (holding that a prisoner's transfer to a different jail moots his claim for declaratory and injunctive relief even when prisoner argues that "there is no assurance that he will not be returned to the [first] jail"). As a result, a prisoner's release on parole moots his claim for equitable relief in the same way that a prisoner's permanent release would