Rehearing en banc granted, May 6, 2010

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SHIRLEY M. BARBOUR; HARRY M.
BARKER; ANTHONY BURTON;
WILLIAM J. CLINE; BARBARA
FAULKNER; RAYMOND N. FLECK, JR.;
ARTHUR HAMILTON, II; DANIEL L.
HAMM; TROY L. HARRIS; GARY
LANDAU; VINCENT MARRA; PEGGY
A. MURPHY; RICHARD DOUGLAS
PERMENTER; PATRICIA PIERSON;
JEFFREY N. ROBERTS; ANNIE SMITH
RODGERS; REESS H. SCOTT; JOYCE
SEE; RONEY SMITH; FRED M.                    No. 08-1740
STEWART; DANIEL LEE TICHNELL;
ROBERT THOMAS; CHARLES F.
WADKINS,

          *Plaintiffs-Appellants,*

          v.

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA; LOCAL NO.
1183 OF INTERNATIONAL UNION,

UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL
IMPLEMENT WORKERS OF AMERICA;
LOCAL NO. 1212 OF INTERNATIONAL
UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL
IMPLEMENT WORKERS OF AMERICA,

*Defendants-Appellees.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(1:08-cv-01076-AMD)

Argued: September 22, 2009

Decided: February 4, 2010

Before AGEE, Circuit Judge, HAMILTON, Senior Circuit
Judge, and Margaret B. SEYMOUR, United States District
Judge for the District of South Carolina,
sitting by designation.

Affirmed in part; vacated and remanded with instructions by
published opinion. Judge Agee wrote the opinion, in which
Judge Seymour joined. Senior Judge Hamilton wrote a sepa-
rate opinion concurring in the judgment in part and dissenting
in part.

**COUNSEL**

**ARGUED**: Thomas C. Costello, WEST & COSTELLO,
LLC, Baltimore, Maryland, for Appellants. Ava Barbour,

INTERNATIONAL UNION, UAW, Detroit, Michigan, for Appellees. **ON BRIEF:** John H. West, III, WEST & COS-TELLO, LLC, Baltimore, Maryland, for Appellants. Wendy L. Kahn, Jeffrey W. Burritt, ZWERDLING, PAUL, KAHN & WOLLY, PC, Washington, D.C., for Appellees.

---

## OPINION

AGEE, Circuit Judge:

In this appeal we first consider whether removal of the case from state to federal court was timely. Holding that the notice of removal was timely filed, we then determine whether the district court possessed subject matter jurisdiction over the case based on the doctrine of complete preemption. For the reasons that follow, we hold that the district court was without subject matter jurisdiction.

### I.    Factual Background

Because this case was decided on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, we accept the facts alleged in the complaint as true and view "them in the light most favorable to the plaintiff[s]." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 228-29 (4th Cir. 2004). The facts, as pled, reflect the following.

Shirley Barbour and certain fellow retirees ("the Retirees") at a Chrysler automobile assembly plant in Newark, Delaware filed suit in the Circuit Court of Cecil County, Maryland against (1) International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("International Union"), (2) Local 1183 of the International Union ("Local 1183"), and (3) Local 1212 of the International Union ("Local 1212") (the defendants are collectively "the

UAW") alleging that the UAW provided them with false information regarding their eligibility to receive retirement incentive packages in 2007.

According to the Retirees' complaint, near the end of 2006 they each had accrued the requisite years of service to retire from Chrysler with full benefits. At about that same time, the Retirees became aware that Chrysler might reduce its workforce and that such workforce reductions might occur at the Newark plant. Knowing that workforce reductions often include financial incentives to retirement-eligible employees, the Retirees sought information from the UAW's benefit representatives concerning their potential eligibility for any financial incentives that might materialize. The Retirees were concerned that if they retired prematurely, they might fail to qualify for workforce reduction financial incentives to which they would otherwise be entitled. Moreover, it was the Retirees' understanding that Chrysler could not offer any such incentives without the approval of the UAW.

The UAW told the Retirees and other employees who inquired that they should delay their retirement from Chrysler until January 31, 2007, which would ensure their eligibility for any workforce reduction financial incentive offered throughout the 2007 calendar year. Relying on this advice, the Retirees submitted the applications necessary to effectuate their respective retirements as of January 31, 2007.

Between the submission of the retirement paperwork and the effective date of their retirement, however, many of the Retirees heard that the offering of a workforce reduction financial incentive package was imminent. In response, some of the Retirees again expressed concern to the UAW that their retirements should be postponed. In response to these inquiries, the UAW's officers and benefits representatives informed the Retirees that "no retirement package was 'coming down,' and that any retirement package offered in 2007 would be retroactive to January 31, 2007 and include all

[employees] who retired on or after that date . . . ." J.A. 29. Relying on this advice, the Retirees retired on January 31, 2007. In mid-February Chrysler announced that financial incentives of approximately $70,000 per person would be offered to employees at the Newark plant but would only apply to persons employed as of the date of the announcement, not retroactively. The Retirees were therefore ineligible to receive the financial incentives.

On April 28, 2008 the Retirees filed their complaint in the Maryland state court asserting that "[a]s a result of their union membership, the UAW owed [them] duties of loyalty, fidelity and full disclosure of all material facts." J.A. 26. Alleging a breach of these fiduciary duties, the Retirees pled a cause of action for negligent misrepresentation based on the UAW's assertions to them that no financial incentives were being negotiated between the union and Chrysler and that any such incentive would be retroactively available to employees retiring on or after January 31, 2007. The Retirees also asserted a claim for negligence based on a breach of "duties of care, fidelity and loyalty" because of (1) the UAW's failure to advise them of the negotiations with Chrysler, (2) the UAW's failure to warn them that their retirement before the financial incentives were announced would preclude them from receiving the incentives, and (3) the International Union's failure to keep the local unions apprised of the status of its negotiations with Chrysler. J.A 55-56.[1]

The Retirees served the International Union with the complaint on March 20, 2008. Local 1183 was served with process on March 29, 2008. On April 28, 2009, more than thirty days after service on the International Union, but within thirty days of service on Local 1183, but before Local 1212 was served, all three defendants filed a joint notice of removal

---

[1]Chrysler is not a defendant in this case and the Retirees make no claim against it nor do they allege that they ever communicated with Chrysler in any way as to the workforce reduction financial incentive package.

pursuant to 28 U.S.C. §§ 1331, 1337 and 1441 even though Local 1212 had not been served.

The UAW pled in the notice of removal that "the duty of care [the Retirees] maintain[ ] [they are] owed from Defendant[s] is the duty of fair representation . . . which arises from UAW's status from its exclusive bargaining authority pursuant to section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159." J.A. 13. The UAW then filed a motion to dismiss under Rule 12(b)(6) based on the assertion that the Retirees' claims were barred by the applicable statute of limitations under federal labor law. *See* § 10(b) of the NLRA, 29 U.S.C. § 160(b).

The Retirees filed a motion to remand the case to state court, arguing that (1) the UAW's notice of removal was not timely filed and (2) there was no basis for federal jurisdiction. On June 12, 2008, the district court issued a memorandum and order denying the Retirees' motion to remand and granting the UAW's motion to dismiss. The district court concluded that the Retirees had "artfully" attempted to "'plead around' the pre-emptive force of federal labor law" and that their state law claims were "completely pre-empted by the federal duty of fair representation" in section 9(a) of the NLRA. J.A. 127. The district court found that "[t]he breach of that duty, if any, is a matter of federal, not state, law." J.A. 127. Concurrent with its denial of the Retirees' motion to remand the district court granted the UAW's motion to dismiss based upon the asserted six-month statute of limitations.[2] The Retirees, having pursued their claims solely in state court, were thus time-barred from filing a claim in federal court.

---

[2]The parties disagree as to the applicability of a six-month statute of limitations to the Retirees' claims and the Retirees have separately assigned error to the district court's dismissal of the case on that basis. Because of our decision regarding the district court's subject matter jurisdiction, it is unnecessary to address any question regarding the applicable statute of limitations.

On the following day, the Retirees moved the district court for reconsideration of its ruling and sought explanation of its determination that the UAW's notice of removal had been timely filed. The district court entered an order denying the Retirees' motion for reconsideration and stating the court's belief that this case presents "an excellent opportunity for the Fourth Circuit to clarify whether the 'first-filed' 'dictum' in *McKinney v. Bd. of Tr. of Mayland Cmty. Coll.*, 955 F.2d 924 (4th Cir. 1992), means what it actually seems to say." J.A. 132.

The Retirees have timely appealed and we have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons set forth below, we affirm the judgment of the district court in part, reverse in part and remand the case with instructions to the district court.

## II.   Timeliness of the Notice of Removal

The threshold issue we consider is whether removal of the case to federal court was timely. If the notice was untimely, we need not consider the UAW's claim of complete preemption, as an untimely notice of removal would require that the case be remanded to the Maryland state court because the federal court would lack jurisdiction over the claims or the parties. If, on the other hand, the UAW's notice of removal was timely, only then must we consider whether the district court properly determined that subject matter jurisdiction otherwise existed over the Retirees' claims.

"For questions concerning removal to federal court, our standard of review is *de novo*." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 203 (4th Cir. 2006). The statutory basis for removal jurisdiction is found in 28 U.S.C. § 1446(b), which provides:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt *by the defendant*, through service or otherwise, of a

> copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

(Emphasis added.) The statute speaks only in terms of a singular defendant and does not explicitly address the timeliness of removal in cases involving multiple defendants, as in the case at bar. *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 532 (6th Cir. 1999) ("The statutory language itself contemplates only one defendant and thus does not answer the question of how to calculate the timing for removal in the event that multiple defendants are served at different times, one or more of them outside the original 30-day period."). "All pertinent sections of the removal statute contemplate cases with more than one defendant, except for § 1446(b). This conspicuous omission has created the most serious statutory construction problem when removal is sought in multidefendant actions." Howard B. Stravitz, *Recocking the Removal Trigger*, 53 S.C. L. Rev. 185, 200 (2002). As a result, our sister circuits have differed in their application of the statute to cases involving multiple defendants.

The Fifth Circuit was the first circuit court of appeals to address the issue in *Brown v. Demco, Inc.*, 792 F.2d 478 (5th Cir. 1986), where it stated that "[t]he general rule . . . is that '[i]f the first served defendant abstains from seeking removal or does not effect a timely removal, subsequently served defendants cannot remove . . . due to the rule of unanimity among defendants which is required for removal." *Id.* at 481. Two years later, in *Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254 (5th Cir. 1988), the Fifth Circuit expressly adopted what has become known as the "first-served defendant" rule.

> In cases involving multiple defendants, the thirty-day period begins to run as soon as the first defendant is served (provided the case is then removable). It follows that since all served defendants must join in the petition, and since the petition must be submitted within thirty days of service on the first defendant, all served defendants must join in the petition no later than thirty days from the day on which the first defendant was served.

*Id.* at 1262-63 (internal citations omitted).

However, since *Getty Oil* was decided, three other circuits have rejected this rule in favor of what is generally referred to as the "last-served defendant" rule. *See*, *Bailey v. Janssen Pharmaceutica, Inc.*, 536 F.3d 1202 (11th Cir. 2008); *Marano Enters. of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753 (8th Cir. 2001); *Brierly*, 184 F.3d at 533. The last-served defendant rule "permits each defendant, upon formal service of process, thirty days to file a notice of removal pursuant to § 1446(b)." *Bailey*, 536 F.3d at 1209. "Earlier-served defendants may choose to join in a later-served defendant's motion or not, therefore preserving the rule that a notice of removal must have the unanimous consent of the defendants." *Id.* at 1207.

After *Getty Oil* but before the decisions in *Bailey*, *Marano* and *Brierly*, this Court touched upon the issue with the following footnote in the *McKinney* decision:

> [W]here B is served *more than* 30 days after A is served, two timing issues can arise, and the law is settled as to each. First, if A petitions for removal within 30 days, the case may be removed, and B can either join in the petition or move for remand. *See* 28 U.S.C. § 1448. Second, if A does *not* petition for removal within 30 days, the case may not be removed.

955 F.2d at 926 n.3.

Courts have characterized the language from the last sentence in Footnote 3 of *McKinney* as a "middle ground" position

> somewhere in between the first-served and last-served-defendant rules. In *McKinney*, the court held that each defendant has thirty days from the date on which it is served to join in "an *otherwise valid* removal petition." Thus, if the original notice of removal filed by an earlier-served defendant is defective in some way, the later-served defendant may not remove, even if it attempts to do so within thirty days of being served.

*Fitzgerald v. Bestway Servs., Inc.*, 284 F. Supp. 2d 1311, 1315-316 (N.D. Ala. 2003) (internal citations omitted); *see also Bailey*, 536 F.3d at 1206 n.5 ("The Northern District of Alabama was probably correct to note that *McKinney* endorsed, essentially, a middle ground between the first-served and last-served defendant rules. . . . ")

Many, if not most, of the district courts in this circuit that have applied *McKinney* have considered the "rule" dicta. *See*, *e.g.*, *Guyon v. Basso*, 403 F. Supp. 2d 502, 508 (E.D. Va. 2005) (acknowledging that defendants "urge the court to . . . disregard *McKinney* dictum that a first-served defendant must file a removal notice within thirty days from the date of service . . . ."); *Ratliff v. Workman*, 274 F. Supp. 2d 783, 787 (S.D. W. Va. 2003) ("statement [in Footnote 3] was unnecessary to the Fourth Circuit's actual decision, however, and is therefore considered dictum"); *Superior Painting & Contracting Co. v. Walton Tech., Inc.*, 207 F. Supp. 2d 391, 393 n.4 (D. Md. 2002) (noting that even though "the court's pronouncements on when first-served defendants must file notices of removal has been termed dicta," district courts within the circuit should still consider dictum presumptively

correct). Judge Shedd, a member of the panel in *McKinney*, wrote in *Branch v. Coca-Cola Bottling Co.*, 83 F. Supp. 2d 631, 634 (D.S.C. 2000), that *McKinney* was not "controlling precedent" "because [the relevant language in Footnote 3] was unnecessary to the Fourth Circuit's actual decision [and] must be considered as being dictum."[3]

Moreover, after the Supreme Court's decision in *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999), the district court in *Ratliff* adopted the last-served defendant rule, holding

> that each defendant has thirty days to remove start- ing from the time service of process is effected on that defendant. This requires that any previously- served defendant be allowed to consent to join in removal even after the expiration of their own thirty- day time limitation. Once the thirty-day time period for the first-served defendants has expired, however, the first-served defendants are no longer allowed to initiate a petition for removal.

274 F. Supp. 2d at 791.

The *Ratliff* court, noting that none of the prior decisions by other district courts in this circuit had addressed the effect of *Murphy Brothers* on removal in actions with multiple defen- dants, determined Footnote 3 was not controlling because "[t]his statement was unnecessary to the Fourth Circuit's actual decision . . . and is therefore considered dictum." 274 F. Supp. 2d at 787. *But see Guyon v. Basso*, 403 F. Supp. 2d 502, 508 n.10 (E.D. Va. 2005) (following *McKinney* and find- ing that *Murphy Brothers* did not address the issue presented); *Ford v. Baltimore City Dep't of Soc. Servs.*, No. CCB-06- 2134, 2006 WL 3324896, at *2 n.2 (D. Md. Nov. 13, 2006)

---

[3]At the time *McKinney* was decided, Judge Shedd was a District Court Judge and sat by designation.

(unpublished) (district court unpersuaded that the Supreme Court's decision in *Murphy Brothers* necessitates rejection of *McKinney*).

The issue having been properly preserved below, and in consideration of the split among the district courts in this circuit, we accept the district court's invitation in this case to clarify the law in this circuit regarding removal under § 1446(b) in cases with multiple defendants.

"[A] panel of this court cannot overrule, explicitly or implicitly, the precedent set by a prior panel of this court. Only the Supreme Court or this court sitting *en banc* can do that." *Mentavlos v. Anderson*, 249 F.3d 301, 312 n.4 (4th Cir. 2001). Therefore, to reject the so-called "*McKinney* rule," we must conclude that either (1) *McKinney* is non-binding precedent, or (2) subsequent holdings of the Supreme Court counsel a different result. We find that, because it was dictum, the "rule" expressed in *McKinney* is not binding on this panel and that intervening case law from the Supreme Court, while not controlling, nonetheless "counsels" a different result. *See United States v. Pasquantino*, 336 F.3d 321, 329 (4th Cir. 2003) (*en banc*) ("The first significant problem is that the statements [the defendants] rely upon . . . are pure and simple dicta, and, therefore, cannot serve as a source of binding authority in American jurisprudence."); *see, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 282 (2001) ("[T]his Court is bound by holdings, not language."); *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379 (1994) ("It is to the holdings of our cases, rather than their dicta, that we must attend . . . ."); *Estate of Love v. Comm'r*, 923 F.2d 335, 337 (4th Cir. 1991) (ruling on issue despite dicta in prior case); *Branch*, 83 F. Supp. 2d at 634 n.12 ("Dictum includes 'any statement of the law enunciated by the court merely by way of illustration, argument, analogy, or suggestion.'") (quoting Black's Law Dictionary 454 (6th ed. 1990)). Even the dissent acknowledges that "the inclusion of Footnote 3 in the *McKinney* deci-

sion arguably was not necessary to the decision . . . ." *Infra* at 38.

We conclude, as have many other courts to consider the issue, that any language in *McKinney* requiring a first-served defendant to have filed a petition for removal within thirty days of being served as a bar to all later-served defendants constitutes non-binding dicta.[4] *See* cases cited *supra* at 10-11; *Bailey*, 536 F.3d at 1206 n.5 ("The Fourth Circuit's decision in [McKinney] endorsed the first-served rule, but in dicta."); *Bonadeo v. Lujan*, No. CIV-08-0812, 2009 WL 1324119, at *6 (D.N.M. Apr. 30, 2009) (noting that *McKinney* "apparently endors[ed] the [last-served defendant] rule in dicta"). While *McKinney* involved multiple defendants served at different times, unlike the case at bar, the first-served defendants in *McKinney* did timely file a notice of removal within 30 days of the service of process on them. The issue in *McKinney* was whether the later-served defendants could join in the existing removal petition (to achieve the required unanimity) more than 30 days after the date of service on the first defendants but within 30 days of service upon the later-served defendants.[5]

---

[4]It is worth noting that Footnote 3 in *McKinney* is dicta citing dicta that is no longer good law. The case cited by the court as authority in Footnote 3, *Quick Erectors, Inc. v. Seattle Bronze Corp.*, 524 F. Supp. 351 (E.D. Mo. 1981), was overruled by the Eighth Circuit in *Marano*. Moreover, the language to which the *McKinney* Court cited in *Quick Erectors* was itself dicta. *See Smith v. Health Ctr. of Lake City, Inc.*, 252 F. Supp. 2d 1336, 1344 (M.D. Fla. 2003) (stating that in *Marano* "the Eighth Circuit adopted a rule contrary to the dicta in *Quick Erectors"*).

[5]We respectfully disagree with our dissenting colleague who contends that "the flaw" in our reasoning is our assertion "that the *McKinney* court did not address the question of initial removal" because, in fact, it did so "when it agreed . . . that the first-served defendant must petition for removal with[in] thirty days of being served." *Infra* at 42. The fact that the court commented upon initial removal does not negate the fact that doing so was unnecessary dicta under the particular facts of that case and not necessary for the Court's holding on later-served defendants.

By contrast, in the case at bar, the first-served defendant, the International Union, did not file a notice of removal within 30 days of being served with process. Thus, the issue of initial removal by a defendant other than the first-served defendant was simply not before the court in *McKinney*. Therefore, the *McKinney* court's expression in Footnote 3 regarding the application of § 1446 in the circumstance where the first-served defendant had not timely filed a notice of removal was gratuitous and unrelated to the issue then before the court.[6] Footnote 3 is classic judicial dictum: "an opinion by a court . . . that is not essential to the decision," Black's Law Dictionary 485 (8th ed. 2004) and therefore not binding on later panels in this circuit. *Pasquantino*, 336 F.3d at 329 ("dicta . . . cannot serve as a source of binding authority in American jurisprudence"); *see also U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 463, n. 11 (1993) (commenting on "the need to distinguish an opinion's holding from its dicta").

The dissent contends that the *McKinney* panel's "agreement with the *Getty Oil* court's first holding was critical to the decision, in that it closed the door to a reading of § 1446(b) that would have allowed later-served defendants to petition for removal within thirty days of being served when the first-served defendant had not." *Infra* at 42. Again, we respectfully disagree. As with the dicta in either the body of *McKinney* or in Footnote 3, the panel's reliance on *Getty Oil* was *not* critical to the issue of whether later-served defendants had thirty days to join in the first-served defendant's already timely filed petition for removal.

---

[6]Similarly, the phrase from the body of the *McKinney* opinion noted by the dissent — "while the first served defendant clearly must petition for removal within thirty days" — is a repeat of the second sentence of Footnote 3 and was not necessary to the basis for the *McKinney* opinion, as noted earlier. The first-served defendant *had* timely filed in *McKinney* and any speculation about what might happen if that defendant had not filed was not germane to the issue before the Court in *McKinney* regarding *later*-served defendants.

In addition to our conclusion that Footnote 3 is non-binding dicta, we, along with the circuit courts of appeal in *Bailey* and *Marano* and the district court in *Ratliff*, also find that the Supreme Court's analysis in *Murphy Brothers* undermines the validity of the last sentence of Footnote 3. In *Murphy Brothers* the Supreme Court was asked to determine "whether the named defendant must be officially summoned to appear in the action before the time to remove [under 28 U.S.C. § 1446(b)] begins to run." *Murphy Brothers*, 526 U.S. at 347. The Court held "that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Id.* at 347-48.

In *Marano*, the Eighth Circuit explained that, although not directly on point, "the legal landscape in this area has been clarified, and perhaps the definitive answer portended, by the Supreme Court's decision in [*Murphy Brothers*]." 254 F.3d at 756. The court concluded

> that, if faced with the issue before us today, the [Supreme] Court would allow each defendant thirty days after receiving service within which to file a notice of removal, regardless of when—or if—previously served defendants had filed such notices. *See* 16 James Wm. Moore et al., Moore's Federal Practice § 107.30[3][a][i], at 107-163 (3d ed. 2000) ("[I]t is likely that the Court may decide that the later served defendants may not have their removal right compromised before they are served, and that they ought to have the opportunity to persuade the earlier served defendants to join the notice of removal. Thus, the fairness approach may well, and should, supercede [sic] the unanimity rule.").

*Id.* at 756-57 (footnote omitted); *see also Shadie v. Aventis Pasteur, Inc.*, 254 F. Supp. 2d 509, 515 (M.D. Pa. 2003)

("This 'later-served defendant' rule appears to be a necessary corollary to the Supreme Court's recent decision in *Murphy Brothers*. . . . "); *Orlick v. J.D. Carton & Son, Inc.*, 144 F. Supp. 2d 337, 343 (D.N.J. 2001) ("In light of the Supreme Court's holding in *Murphy Brothers*, however, it is counter-intuitive to maintain a 'first-served defendant' rule when the Supreme Court would not — consistent with *Murphy Brothers* — begin to run a later-served defendant's time to seek removal until that defendant received proper service of process.")

Agreeing with the Eighth Circuit's reasoning, the Eleventh Circuit concluded:

> Perhaps prior to *Murphy Brothers* and its holding that notice is insufficient to trigger § 1446(b)'s time window, the issue of which rule to endorse would be a closer call than it is now. The tide of recent decisions by the courts of appeals . . . recognize that equity favors permitting each defendant thirty days in which to seek removal under the statute. As the Eighth Circuit observed, the last-served defendant rule is consistent with *Murphy Brothers* . . . [which] signals a slight departure from the weight courts might ordinarily put on strict construction of the removal statute. It appears to us to be contrary to the Supreme Court's holding in *Murphy Brothers*, as well as the interests of equity, to permit a first-served defendant to, in effect, bind later-served defendants to a state court forum when those defendants could have sought removal had they been more promptly served by the plaintiff.

*Bailey*, 536 F.3d at 1208 (footnote omitted).

Like the Eighth and Eleventh Circuits, we agree that *Murphy Brothers*, though not dispositive of the issue, lends credible and persuasive support to the propriety of the last-served

defendant rule. The facts of this case illustrate the conflict between *Murphy Brothers* and *McKinney*. Here, the International Union was served on March 20, 2008, and Local 1183 was served nine days later on March 29, 2008. Despite the fact that Local 1212 was never served, it nonetheless joined in the notice of removal filed on April 28, 2008 (39 days after service on the International Union and 30 days after service on Local 1183). "Contrary to *Murphy Brothers*, the first-served defendant rule would [have] obligate[d Local 1212] to seek removal prior to [its] receipt of formal process bringing [it] under the court's jurisdiction." *See id.* at 1208. Under either the pure first-served defendant rule or the *McKinney* rule, Local 1212's right of removal would have been waived by the International Union's failure to file a notice of removal within 30 days of being served even though it was not yet within the court's jurisdiction. Such prejudice to Local 1212's rights would violate the spirit, if not the letter, of the "bedrock principle" that "a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Brothers*, 526 U.S. at 347.

The "*McKinney* rule" also conditions the right to removal for subsequently served defendants upon actions taken by previously served defendants, who must have filed a notice of removal within 30 days of having been served. *See Marano*, 254 F.3d at 755 n.4 (observing that the *McKinney* rule is "fully in keeping with the first-served rule: it still requires that the first-served defendant file a notice of removal within thirty days and precludes a later-served defendant from instigating removal if more than thirty days have passed since the first defendant was served"). As we said in *McKinney*, referring to the first-served defendant rule, "[w]e do not think that Congress, in providing for removal to federal court, intended to allow inequitable results." 955 F.2d at 927. The Sixth, Eighth and Eleventh Circuits each discussed this inequity in adopting the last-served defendant rule. *See Bailey*, 536 F.3d at 1206 ("[W]e are convinced that both common sense and

considerations of equity favor the last-served defendant rule."); *Marano*, 254 F.3d at 755 ("The [Fifth Circuit in *Getty Oil*] did not consider, however, the 'hardships' to a defendant when the first-served defendant for whatever reason does not file a notice of removal within thirty days of service.") (emphasis omitted); *Brierly*, 184 F.3d at 533 ("[A]s a matter of fairness to later-served defendants, we hold that a later-served defendant has 30 days from the date of service to remove a case to federal district court, with the consent of the remaining defendants."). This principle would apply as well to Local 1183, if the failure of another party, the International Union, could be construed as waiving Local 1183's right to removal.

One commentator has explained the inequity thrust upon later-served defendants as follows:

> [N]either § 1446(a) nor § 1446(b) contemplates a scenario in which defendants are served as much as thirty days apart, or in which an unsophisticated defendant is served first and a more sophisticated defendant is served later. In these instances, the second-served defendant should be able to timely remove and persuade the first-served defendant to join the removal. Otherwise, the first-served defendant abridges the second-served defendant's procedural right to a federal forum. If the first-served defendant makes a conscious choice not to remove, the second-served defendant has to accept that choice. But the second-served defendant should have a reasonable opportunity to consult with the first-served defendant regarding possible removal. Consultation is practically impossible if service on the second defendant occurs near the end of or after the first defendant's thirty-day removal period has expired.

Stravitz, *supra*, at 202-203.

In dissent our distinguished colleague finds "nothing inequitable about interpreting § 1446(b) in a manner that applies its thirty-day timeframe to all defendants where removal is to be achieved." *Infra* at 46. We respectfully disagree. In *Murphy Brothers* the Supreme Court made clear that "[i]n the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant. 526 U.S. at 350. It would be an odd and seemingly unjust result for a federal court's (removal) jurisdiction to rest upon a first-served co-defendant's deliberate or careless inaction. Despite the Supreme Court's admonition that "one becomes a party officially, and is required to take action in that capacity, *only* upon service of a summons . . ." *id.* (emphasis added), the practical effect of adhering to the dissent's view would require an unserved defendant, who may or may not be aware of the lawsuit, to urge a first-served defendant with whom he may have no relationship, to file a petition for removal. *Murphy Brothers* does not counsel such a result.[7]

The dissent criticizes the last-served defendant rule because it only requires the last-served defendant "to act in a timely manner," *infra* at 46, whereas the *McKinney* rule seeks to "give effect to all the language in § 1446(b)" by requiring "every defendant to act within thirty days of being served." *Id.* (emphasis omitted). But the *McKinney* rule only requires *every* defendant to act if every preceding defendant acted; if the first-served defendant was dilatory, the remaining defendants cannot act at all.

---

[7]The dissent argues that the *McKinney* Rule "prevents the first-served defendant from benefitting from his inaction" by requiring him to act or else "forfeit[ ] his right to remove the case or to consent to the removal." *Infra* at 45. The fallacy in this view is that it is all defendants, not just the first-served defendant, who is penalized by the first-served defendant's inaction because it is the not-yet-served or later-served defendants' rights that are forfeited before they have been brought within the federal court's jurisdiction.

The dissent also finds the McKinney Rule "less intrusive than the Last-Served Defendant Rule on the principle that we construe removal statutes strictly." *Infra* at 45. While it is axiomatic that removal statutes should be strictly construed, the crux of our disagreement with the dissent derives from the inherent difficulties in attempting to strictly construe a statute that does not address the factual circumstances involved (multiple defendants). Each of the various interpretations propounded (e.g., first-served defendant rule, last-served defendant rule, and *McKinney* rule) has some logical basis and all can be said to require the addition of words to the statute. Nonetheless, we find the reasoning of the majority of our sister circuits *most* closely matches Congress' intent in adopting § 1446, an admittedly ambiguous statute.

In conclusion, we believe the so-called "*McKinney* rule" is based on non-binding dicta and the Supreme Court's opinion in *Murphy Brothers* counsels a different result. We therefore join the Sixth, Eighth and Eleventh Circuits in adopting the last-served defendant rule and hold that in cases involving multiple defendants, each defendant, once served with formal process, has thirty days to file a notice of removal pursuant to 28 U.S.C. § 1446(b) in which earlier-served defendants may join regardless of whether they have previously filed a notice of removal.[8]

Accordingly, we hold that the joint notice of removal was timely filed in this case and affirm the judgment of the district court in that respect.

---

[8]In our view, this rule does not work an injustice on a plaintiff who, by serving the defendants as contemporaneously as possible, can minimize any significant disruption either to their case or proceedings in the state court. Thus, while any such burden is minimal, *all* defendants have their opportunity to remove the case protected. *See Stravitz*, *supra*, at 210 ("[T]he only rule that balances plaintiff-oriented policies of unanimity and timelessness with a defendant's procedural right to remove is the true last-served defendant rule . . . .").

### III. Complete Preemption

### A.

Having determined that the UAW's removal notice was timely filed, we next address whether the district court correctly determined that the Retirees' claims were completely preempted by federal law. As we explain below, application of the complete preemption doctrine is the only basis by which the UAW could establish jurisdiction in the district court over the Retirees' claims upon removal. If the district court erred in that conclusion, and the Retirees' claims were not completely preempted, then the district court lacked subject matter jurisdiction and had no authority to rule on the Rule 12(b)(6) motion. For the following reasons we find that the district court lacked subject matter jurisdiction because complete preemption is not present in this case.

Generally, removal from state court is available only in three circumstances: (1) "if the parties are diverse and meet the statutory requirements for diversity jurisdiction" as set forth in 28 U.S.C. §§ 1332, 1441(b); (2) "if the face of the complaint raises a federal question;" or (3) "if the subject matter of a putative state law claim has been totally subsumed by federal law—such that state law cannot even treat on the subject matter . . . ." *Lontz v. Tharp*, 413 F.3d 435, 439-40 (4th Cir. 2005). The UAW did not attempt to remove the case to federal court on the basis of diversity jurisdiction and has not argued that a federal claim is presented on the face of the complaint. Therefore, we only consider, as the UAW has argued and the district court determined, whether the doctrine of complete preemption provides a basis for federal jurisdiction.

We review questions of subject matter jurisdiction de novo, "including those relating to the propriety of removal." *Mayes v. Rapoport*, 198 F.3d 457, 460 (4th Cir. 1999). The burden of demonstrating juris-

diction resides with "the party seeking removal." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). We are obliged to construe removal jurisdiction strictly because of the "significant federalism concerns" implicated. *Id.* Therefore, "[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary." *Id.*

*Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 815-16 (4th Cir. 2004) (en banc) (alterations in original); *Payne*, 439 F.3d at 203 ("For questions concerning removal to federal court, our standard of review is *de novo*."). "Under what has become known as the well-pleaded complaint rule, § 1331 federal question jurisdiction is limited to actions in which the plaintiff's well-pleaded complaint raises an issue of federal law . . . ." *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 584 (4th Cir. 2006). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) ("As a general rule, absent diversity jurisdiction, a case will not be removable if the Complaint does not affirmatively allege a federal claim."). "The doctrine of complete preemption provides a corollary to the well-pleaded complaint rule. This doctrine recognizes that some federal laws evince such a strong federal interest that, when they apply to the facts underpinning the plaintiff's state-law claim, they convert that claim into one arising under federal law." *In re Blackwater*, 460 F.3d at 584.

Our roadmap for determination of the issue of complete preemption is provided by our decision in *Lontz*, which states the applicable principles clearly and concisely.

    We have noted our obligation "to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated" by it. *Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d

255, 260 (4th Cir. 2005) (quoting *Mulcahey*, 29 F.3d at 151). "Federalism concerns strongly counsel against imputing to Congress an intent to displace a whole panoply of state law . . . absent some clearly expressed direction." *Custer v. Sweeney*, 89 F.3d 1156, 1167 (4th Cir. 1996) (internal quotes omitted). Consistent with these principles, we have recognized that state law complaints usually must stay in state court when they assert what appear to be state law claims. *See, e.g.*, *Harless v. CSX Hotels, Inc.*, 389 F.3d 444, 450 (4th Cir. 2004); *King*, 337 F.3d at 424; *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 186 (4th Cir. 2002); *Cook v. Georgetown Steel Corp.*, 770 F.2d 1272, 1274 (4th Cir. 1985). The presumption, in other words, is against finding complete preemption. *Custer*, 89 F.3d at 1167.

But that presumption is rebuttable, because federal law occasionally "displace[s] entirely any state cause of action." *Franchise Tax Board*, 463 U.S. at 23. When it does, federal law then "provide[s] the exclusive cause of action for such claims," and therefore "there is . . . no such thing as a state-law claim" in the regulated area. *Beneficial*, 539 U.S. at 11, 123 S. Ct. 2058. The doctrine of complete preemption thus prevents plaintiffs from "defeat[ing] removal by omitting to plead necessary federal questions." *Franchise Tax Board*, 463 U.S. at 22, 103 S. Ct. 2841. It thereby ensures compliance with congressional intent that federal courts be available to resolve certain claims which are peculiarly national in scope. Defendants' burden, then, is to demonstrate that a federal statute indisputably displaces any state cause of action over a given subject matter.

In assessing whether defendants have carried their burden, we may not conflate "complete preemption" with "conflict" or "ordinary" preemption. While

these two concepts are linguistically related, they are not as close kin jurisprudentially as their names suggest. Complete preemption is a "jurisdictional doctrine," while ordinary preemption simply declares the primacy of federal law, regardless of the forum or the claim. *Sonoco Prods.*, 338 F.3d at 370-71. Ordinary preemption has been categorized as a federal "defense to the allegations." *Caterpillar*, 482 U.S. at 392, 107 S. Ct. 2425. And as a mere defense, the "preemptive effect of a federal statute . . . will not provide a basis for removal." *Beneficial*, 539 U.S. at 6, 123 S. Ct. 2058 (internal citations omitted). *See also Rivet*, 522 U.S. at 475-76, 118 S. Ct. 921; *Caterpillar*, 482 U.S. at 392-93, 107 S. Ct. 2425; *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66, 107 S. Ct. 1542, 95 L.Ed.2d 55 (1987) ("even an 'obvious' pre-emption defense does not, in most cases, create removal jurisdiction"); *Franchise Tax Board*, 463 U.S. at 14, 28, 103 S. Ct. 2841. Even if preemption forms the very core of the litigation, it is insufficient for removal. *Caterpillar*, 482 U.S. at 393, 107 S. Ct. 2425.

*Lontz*, 413 F.3d at 440-41 (alterations in original).

In the case at bar, we believe the district court and the UAW have conflated complete preemption and ordinary preemption.[9] Although the UAW's claim that the duty of fair representation may be a defense of federal law to the Retirees' claims, it is a defense of ordinary preemption and not a case where Congress has clearly and unequivocally "displaced any state cause of action."[10]

---

[9]We agree with the *Lontz* Court that "[i]f this distinction amounted to deciding which court had the honor of dismissing the case, it might appear to be a dispute over trifles," but we, too, "think more is at stake." 413 F.3d at 442.

[10]In the district court's original order granting the motion to dismiss, it did so "for the reasons explained and discussed at length . . . in *Taylor v.*

B.

The UAW bears the heavy burden of proving that § 9(a) of the NLRA "indisputably displaces" the claims set forth in the Retirees' amended complaint and "the presumption . . . is against finding complete preemption." *Lontz*, 413 F.3d at 441, 440 (citing *Custer v. Sweeney*, 89 F.3d 1156, 1167 (4th Cir. 1996)). "Ordinary preemption has been categorized as a federal 'defense to the allegations,'" *Lontz*, 413 F.3d at 440 (citing *Caterpillar*, 482 U.S. at 392), and "declares the primacy of federal law, *regardless of the forum* or the claim." *Id.* (citing *Sonoco Prods.*, 338 F.3d at 370-71) (emphasis added). Because ordinary preemption is merely a defense, it does not "provide a basis for removal." *Id.* (quoting *Beneficial*, 539 U.S. at 6).

> [I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, *including the defense of pre-emption*, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.

*Caterpillar*, 482 U.S. at 393 (citation omitted) (second emphasis added); *In re Blackwater*, 460 F.3d at 584 ("[A]ctions in which defendants merely claim a substantive federal defense to a state-law claim do not raise a federal question.") (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)).

In contrast, complete preemption means that "there is 'no such thing' as the state action." *Lontz*, 413 at 441 (citing *Ben-*

---

*Giant Food, Inc.*, 438 F. Supp. 2d 576 (D. Md. 2006)." However, that case is simply inapposite to the case at bar. In *Taylor*, the plaintiffs specifically pled "breach of the duty of fair representation," which clearly embraced § 9(a) of the NLRA. 483 F. Supp. 2d at 585. There is no such pleading in the case before us and the district court's opinion in *Taylor* has no application to this case.

*eficial*, 539 U.S. at 11). This Court has made clear that the primary consideration in finding complete preemption is whether Congress intended for the statute to entirely displace state law — an intent that must be clear in the text of the statute. *Id.*; *see also Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 230 (4th Cir. 1993). Again, our opinion in *Lontz* precisely explains what the UAW was required to show in order to establish subject matter jurisdiction in the district court by virtue of the complete preemption of the Retirees' claims.

> Recognizing that complete preemption undermines the plaintiff's traditional ability to plead under the law of his choosing, the Supreme Court has made clear that it is "reluctant" to find complete preemption. *Metro. Life*, 481 U.S. at 65. The Court has, in fact, found complete preemption in only three statutes. *See Beneficial*, 539 U.S. at 10-11, 123 S. Ct. 2058 (National Bank Act); *Metro. Life*, 481 U.S. at 66-67, 107 S. Ct. 1542 (ERISA § 502(a)); *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 560, 88 S. Ct. 1235, 20 L.Ed.2d 126 (1968) (Labor Management Relations Act ("LMRA") § 301). Unsurprisingly, therefore, the Court has articulated exacting standards that must be met before it will find complete preemption. Most notably, the congressional intent that state law be entirely displaced must be clear in the text of the statute. *See Metro. Life*, 481 U.S. at 65-66, 107 S. Ct. 1542.

> In fact, the Court in *Beneficial* emphasized that the preempting statute must not only create a federal cause of action, but must also show that Congress intended it to "provide *the exclusive* cause of action" for claims of overwhelming national interest. *Beneficial*, 539 U.S. at 9, 11, 123 S. Ct. 2058 (emphasis added).

*Lontz*, 413 F.3d at 441.

Thus, for complete preemption to apply, it is not sufficient for a defendant to show the plaintiff's state law claim could have been made as a federal law claim. Otherwise, the well-pleaded complaint rule would be turned on its head and removal jurisdiction would explode exponentially. Instead, a removing defendant must show not only that the defendants' state law claim is cognizable as a federal claim, but that the Congress clearly intended the federal claim to "'provide *the exclusive* cause of action' for claims of overwhelming national interest." *Id.* at 441 (citing *Beneficial*, 539 U.S. at 11).

It is important to keep in context the claims actually pled by the Retirees. Significantly, the Retirees plead no claim against Chrysler, their employer. Neither do they plead a breach of a collective bargaining agreement or of any duty owed by the UAW as their bargaining agent. Furthermore, there is no allegation by the Retirees which makes any term in a collective bargaining agreement relevant to their state law claims.

Instead, the Retirees plead typical state law causes of action for violation of a fiduciary duty brought about by their membership in an organization. These common law duties are the basis, historically, of many causes of action in state courts and do not inherently represent an "overwhelming national interest."

In the case at bar, the UAW directs us to no statutory language in § 9(a) of the NLRA, nor to any legislative history, showing a clear intent by the Congress that *all* state law claims relating to *all* fiduciary duties owed to union members by virtue of their union membership are exclusively federal claims under § 9(a). On its face, § 9(a) simply does not reveal an intent to always foreclose state law claims for breach of

fiduciary duty arising solely on the basis of union member-ship.

In *McCormick v. AT & T Technologies, Inc.*, 934 F.2d 531 (4th Cir. 1991), we explained in the related context of the LMRA that "[s]ection 301 not only provides federal courts with jurisdiction over employment disputes covered by col-lective bargaining agreements, [it] also *directs federal courts to fashion a body of federal common law to resolve such dis-putes.*" *Id.* at 534 (emphasis added). No such congressional imperative exists with respect to § 9(a) of the NLRA because the duty of fair representation is, itself, "judicially created." One would not expect to find a clear statement of congressio-nal intent regarding a judicially created duty. *See Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 47 (1979) ("The right to bring unfair representation actions is judicially 'implied from the statute and the policy which it has adopted . . . .'") (quot-ing *Steele v. Louisville & Nashville R. Co.*, 323 U.S. 192, 204 (1944)); *Wrobbel v. Asplundh Constr. Corp.*, 549 F. Supp. 2d 868, 875 (E.D. Mich. 2008) ("[T]he fact that the federal duty of fair representation is a *judicial* creation tends to undermine the argument that *Congress* intended § 9(a) to supplant state law with a federal cause of action.").

Moreover, the Supreme Court, by way of illustration, has stated that "the union's duty of fair representation is *implied* from its status as the exclusive bargaining representative of the bargaining unit workers." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 48 (1998) (emphasis added). Thus, without an express intent to preempt state law, the UAW nonetheless asks us to find that Congress implicitly intended to preempt state law based on duties that are themselves implied from the alleged preemptory statute. This is one implication too many. A finding of complete preemption so as to establish federal subject matter jurisdiction in these cir-cumstances would undermine established concepts of federal-ism, not to mention contradict the clear precedent of this Court that "strongly counsel[s] against imputing to Congress

an intent to displace 'a whole panoply of state law[']. . . absent some clearly expressed direction." *Custer*, 89 F.3d at 1167; *Lontz*, 413 F.3d at 440.

In the absence of a statutory basis for complete preemption in this case, the UAW then relies on opinions from two other circuits to support their complete preemption argument. We find these cases distinguishable and unavailing.

In *Richardson v. United Steelworkers*, 864 F.2d 1162 (5th Cir. 1989), the employees sued their union in Texas state court for failing to warn them that their employer had a statutory right to replace them if they went on strike. *Id.* at 1164. In their initial pleading the employees asserted that the union "*acted as bargaining agent for [them]*" and, as such, "*had a duty* to advise them of measures which their employer could, and in reasonable probability would, take" in the event they rejected their employer's final offer and went on strike. *Id.*

Initially, the union removed the case to federal court on the basis that jurisdiction existed pursuant to § 301 of the LMRA, 29 U.S.C. § 185 *et seq*. With leave of court, the union subsequently filed an amended removal petition asserting jurisdiction based on the fact that the plaintiffs' claims were actually "for breach of its duty of fair representation under the NLRA." 864 F.2d at 1164. The employees filed a motion to remand the case, which the district court denied. *Id.* at 1165.

On appeal, the Fifth Circuit relied upon the plaintiffs' allegations that "the Union had a duty to advise them of [their employer's] right to replace them if they went on strike," and "*that this duty arose from the Union's status as their collective bargaining agent*." *Id.* (emphasis added). The court specifically noted that the employees' "assert[ed] no other source of this duty." *Id.* Stating that "[t]he Union's right to act as plaintiffs' bargaining agent is conferred by the NLRA," the court held "that the duties corresponding to this right conferred by federal labor law [were] . . . defined solely by fed-

eral labor law" and thus completely preempted state law. *Id.* "As a result of this complete preemption of state law . . . the district court had removal jurisdiction over these actions." *Id.*

Critical to the court's holding in *Richardson* was the fact that the "[p]laintiffs simply alleged that the Union was 'the bargaining agent for Plaintiffs' and that it 'acted as bargaining agent for Plaintiffs in connection with their employment . . . .'" *Id.* According to the court, "these statements clearly imply that the Union was the exclusive bargaining agent under the NLRA for the collective bargaining unit of which plaintiffs . . . were members, and the subsequent briefs and motions of all parties, here and below, in fact treat the Union as such." *Id.* Of critical importance for our analysis is the Fifth Circuit's distinction between the case it considered and one pled differently under state law:

> this case . . . does not present the question of whether the Union was subject to "an independent state-law duty of care . . . arising *simply from the relationship of a union to its members*." Plaintiffs here allege a duty arising from the collective bargaining agent's relationship under the NLRA with the bargaining unit members, who may or may not be union members. Indeed, plaintiffs' original petition does not even allege that plaintiffs are or were members of the Union. *Nor does this case involve state law actions that are not preempted because the activity complained of touches interests "deeply rooted in local feeling" or is only a "peripheral concern of the NLRA."*

*Id.* at 1167 (internal citations omitted) (emphases added).

Directly contrary to the factual basis pled in *Richardson*, the Retirees' amended complaint states that "[a]s a result of their union membership, the UAW owed [them] duties of loyalty, fidelity and full disclosure of all material facts." J.A. 26.

In fact, these are the *only* duties the plaintiffs allege they were owed by the UAW in the context of their tort claims. Unlike the plaintiffs in *Richardson*, who "did not allege any breach of a state tort duty that exists independently of the NLRA-established collective bargaining relationship, which is the central concern of the NLRA," *id.* at 1167, the Retirees have alleged "an independent state-law duty of care arising simply from the relationship of a union to its members." *See id.* (quoting *Int'l Bd. of Elec. Workers v. Hechler*, 481 U.S. 851, 862 n.5 (1987)). Thus, we conclude *Richardson* supports the Retirees' argument against a finding of complete preemption and is of no assistance to the UAW.

In the other case relied upon by the UAW, *BIW Deceived v. Local S6, Indus. Union of Marine and Shipbuilding Workers*, 132 F.3d 824 (1st Cir. 1997), tradesmen went to Maine to interview for employment with Bath Iron Works. *Id.* at 827. Union representatives participated in the interviews pursuant to a collective bargaining agreement and, according to the tradesmen, assured them of continued employment due to Bath's great need for their skills. *Id.* Despite these assurances, however, Bath laid off the tradesmen several months after they began their employment. *Id.* Not surprisingly, the workers filed suit against the union in state court, alleging, among other things, claims for negligence and fraudulent misrepresentation. *Id.* The union removed the case to federal court on the basis that the plaintiffs' claims were barred by § 9(a) of the NLRA and/or § 301 of the LMRA.

On appeal, the First Circuit determined

> that [duty of fair representation] preemption operates in much the same fashion as [LMRA] section 301 preemption. . . . [W]e hold that a district court possesses federal question jurisdiction when a complaint, though garbed in state-law raiment, sufficiently asserts a claim implicating the duty of fair representation.

*Id.* at 831-32 (internal citations omitted). The court then resorted to the "artful pleading doctrine" to "conclude without serious question that the instant complaint reveals a colorable question of federal law and that, therefore, the district court did not err when it denied the motion to remand." *Id.* at 833. We find the First Circuit's reasoning unpersuasive for several reasons.

First, in support of its holding, the district court cited *Richardson*, which, for the reasons set forth above, specifically excepted suits under state law, like that of the Retirees, from the reach of complete preemption. Second, mindful of our obligation to "strictly construe removal jurisdiction," *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994), we are not convinced, as we noted above, that the "manifestation of congressional will" with respect to the § 9(a) duty of fair representation applies with the same clarity as under § 301 of the LMRA in cases such as that now before us. Lastly, we note the First Circuit found, without citation to the text of the statute or any of its legislative history, an implication of complete preemption for an implied duty of fair representation. *See* 132 F.3d at 831-33. This simply does not adhere to the *Lontz* requirement that "congressional intent that state law be entirely displaced must be clear in the text of the statute." 413 F.3d at 441.

Keeping in mind that any reasonable doubts must be resolved against complete preemption, *id.*, we cannot conclude, as the UAW urges, that every state law cause of action based on a misrepresentation or negligent omission made by a union to some or all of its members must necessarily flow from exclusive federal duties under § 9(a). Further, in view of the lack of any clear expression of Congressional intent to preempt such state law claims, we cannot conclude that § 9(a) of the NLRA "wholly displaces" every state law cause of action in circumstances such as before us in the case at bar. *Beneficial*, 539 U.S. at 8. Thus, we must conclude that the doctrine of complete preemption does not apply in this case.

Consequently, there was no basis for removal of this case to the district court under 28 U.S.C. § 1441 and the district court lacked jurisdiction. The district court erred in concluding otherwise and in not granting the Retirees' motion to remand the case to state court.[11,12]

---

[11]In the event that we found, as we have, that the duty of fair representation in § 9(a) does not completely preempt the Retirees' state law claims, the UAW argued in the alternative that the claims are completely preempted by § 301 of the LMRA. Preemption under § 301 can only occur when claims are "founded directly on rights created by collective-bargaining agreements" or are "substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc.*, 482 U.S. at 394 (internal quotation marks omitted).

The UAW bases its argument on the following allegations made by two of the retiree plaintiffs: that they "contacted their Union representatives and asked to grieve or appeal the UAW's false statements to them regarding the offer of a retirement package and retroactive nature of any package subsequently offered. Both . . . were informed by Union officers that no grievance and/or appeal could be filed regarding this matter." J.A. 51-52. These allegations, it is argued, "requires interpretation of the CBA." Appellee's Br. at 39. We disagree.

As the Retirees point out, their complaint does not charge the UAW with negligence by denying access to a grievance procedure or with negligent representation during a grievance proceeding. The allegations, which appear in the "fact" section of the complaint, merely explain what inquiries some of the plaintiffs made in response to learning they were ineligible for the incentive packages. Unlike the situation in *BIW Deceived*, in which the union stood "accused of violating a duty of care that flowed to it pursuant to the [collective bargaining agreement]," 132 F.3d at 833, this record does not indicate any need to analyze the terms of a collective bargaining agreement in connection with the Retirees' claims.

In sum, the Retirees' state law claims for negligence and negligent misrepresentation are not preempted by § 301.

[12]We express no view as to the application of ordinary preemption as a factual defense which the UAW may well raise in the state court if it be so advised. "We [also] express no view as to whether such claims on the merits are preempted by federal law, as this is a question for state courts to resolve." *Lontz*, 413 F.3d at 438.

IV.

In conclusion, we adopt the last-served defendant rule as the law of this circuit and affirm the judgment of the district court that the defendants timely filed the notice of removal. Further, we hold that the district court was without subject matter jurisdiction over the Retirees' claims because the doctrine of complete preemption does not apply here to create a basis for removal under 28 U.S.C. § 1441. Accordingly, we reverse the judgment of the district court granting the UAW's motion to dismiss and remand this case to the district court with instructions to remand the case to the Maryland state court.

*AFFIRMED IN PART; VACATED AND REMANDED WITH INSTRUCTIONS*

HAMILTON, Senior Circuit Judge, concurring in the judgment in part and dissenting in part:

Over seventeen years ago, in *McKinney v. Board of Trustees of Mayland Community College*, 955 F.2d 924 (4th Cir. 1992), this court allowed two defendants, who were not served within thirty days of the date the first three defendants were served, to join a removal petition that was filed by the other ten defendants within thirty days of the date the first three defendants were served. *Id.* at 926, 928. In so allowing, we rested our decision on the premise that, in removal cases involving multiple defendants, a removal petition must be filed within thirty days of the date the first-served defendant is served. *Id.* at 926. Under *McKinney*, the defendants' removal petition in this case is untimely, as it was filed more than thirty days after the International, the first-served defendant in this case, was served.

Fortunately for the defendants, the majority today jettisons *McKinney*, choosing instead to adopt the so-called "Last-Served Defendant Rule," a rule it believes will best serve

removal when multiple defendants are involved. The Last-Served Defendant Rule is totally inconsistent with our decision in *McKinney*, as the rule allows a removal petition to be filed more than thirty days after the date the first-served defendant was served. Because a panel of this court cannot overrule a prior panel, *Mentavlos v. Anderson*, 249 F.3d 301, 312 n.4 (4th Cir. 2001), I believe we are bound by our precedent in *McKinney*. Moreover, to avoid the dictates of *McKinney*, the majority takes language from the Supreme Court's decision in *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999), and uses it out of context to conclude that this "no[n-] dispositive" case, *ante* at 16, effectively overrules *McKinney*. With all due respect to the majority, *Murphy Brothers* does not overrule *McKinney*, because: (1) *Murphy Brothers* did not involve multiple defendants; and (2) the concerns of *Murphy Brothers* are not implicated in this case. Accordingly, I dissent from the majority's decision concluding that the defendants' petition for removal was timely filed under the Last-Served Defendant Rule. However, I concur in the majority's judgment to the extent it remands the case to state court.

I

A

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). We presume "that a cause lies outside this limited jurisdiction, . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* Removal statutes, in particular, must be strictly construed, inasmuch as the removal of cases from state to federal court raises significant federalism concerns. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941). Doubts about the propriety of removal should be resolved in favor of remanding the case to

state court. *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (*en banc*); *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999).

Section 1441(a) of Title 28 provides that "the defendant or the defendants" may seek to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Section 1446 of Title 28 describes the appropriate removal procedure to invoke federal jurisdiction, and requires the defendant seeking removal to file a timely removal petition stating the grounds for removal with the appropriate federal district court. *Id.* § 1446(a). In order to be timely,

> [t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .

*Id.* § 1446(b). The thirty-day window for removal is designed to prevent "undue delay in removal and the concomitant waste of state judicial resources." *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 163 (4th Cir. 1997).

Unlike § 1446(a), § 1446(b) does not speak in terms of multiple defendants. However, it is well-settled in cases involving multiple defendants that "all of the defendants must agree to the removal of the state court action," *Creasy v. Coleman Furniture Corp.*, 763 F.2d 656, 660 (4th Cir. 1985), and, consequently, all served defendants must join in the removal petition. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006).

The omission of the term "defendants" in § 1446(b) has led to a circuit split over whether every defendant in a multiple-defendant case has a right to seek removal within thirty days

of service or whether the thirty-day window begins to run from receipt of service by the first-served defendant. Our decision in *McKinney* has been recognized as an intermediate rule (the *McKinney* Intermediate Rule), between the First-Served Defendant Rule (adopted by the Fifth Circuit) on the one hand and the Last-Served Defendant Rule (adopted by the Sixth, Eighth, and Eleventh Circuits) on the other. *See, e.g.*, *Guyon v. Basso*, 403 F. Supp. 2d 502, 506-07 (E.D. Va. 2005). And with one exception, district courts in this circuit have faithfully applied the *McKinney* Intermediate Rule. *See Ford v. Baltimore City Dep't of Soc. Servs.*, No. 06-2134, 2006 WL 3324896, at *1-2 (D. Md. Nov. 13, 2006) (unpublished) (following *McKinney* Intermediate Rule); *Guyon*, 403 F. Supp. 2d at 507-10 (same); *Superior Painting & Contracting Co., Inc. v. Walton Tech., Inc.*, 207 F. Supp. 2d 391, 392-93 (D. Md. 2002) (same); *Branch v. Coca-Cola Bottling Co.*, 83 F. Supp. 2d 631, 634-36 (D.S.C. 2000) (same); *Bazilla v. Belva Coal Co.*, 939 F. Supp. 476, 478 (S.D. W. Va. 1996) (same); *Beasley v. Goodyear Tire & Rubber Co.*, 835 F. Supp. 269, 272 (D.S.C. 1993) (same); *but see Ratliff v. Workman*, 274 F. Supp. 2d 783, 786-90 (S.D. W. Va. 2003) (declining to follow *McKinney* Intermediate Rule).

Stated succinctly, the First-Served Defendant Rule requires a removal petition to be filed within thirty days of service on the first-served defendant and requires all defendants to join the removal petition within the first-served defendant's thirty-day window. Like the First-Served Defendant Rule, the *McKinney* Intermediate Rule requires a removal petition to be filed within the first-served defendant's thirty-day window, but gives later-served defendants thirty days from the date they were served to join the removal petition. The Last-Served Defendant Rule gives each defendant his own thirty-day window; thus, under this rule, the thirty-day window can expire for all but the last-served defendant, as long as the last-served defendant files a timely removal petition within thirty days from the date of service on that defendant.

B

In choosing to reject the *McKinney* Intermediate Rule, the majority posits that the rule is premised on *dicta*, primarily from Footnote 3 of the *McKinney* decision. However, Footnote 3 simply states the necessary corollaries that arise from the *McKinney* court's adoption of the principle that a removal petition must be filed within thirty days of service on the first-served defendant. Thus, although the inclusion of Footnote 3 in the *McKinney* decision arguably was not necessary to the decision, it provides by way of further explanation what are the consequences of embracing a rule that requires the removal petition to be filed within thirty days of service on the first-served defendant.

In *McKinney*, a group of dismissed employees of Mayland Community College sued the college's board of trustees in their individual and official capacities in North Carolina state court, alleging unlawful discharge. 955 F.2d at 925. Three of the twelve defendants were served on April 25, 1988, while eight others were served on May 19, 1988. *Id.* The three members of the first group and seven of the eight from the second group filed for removal on May 25, 1998, thirty days after service on the first three. *Id.* The defendants could not find the eighth defendant in the second group to obtain her consent to the removal petition. *Id.* The plaintiffs served the final, twelfth defendant after the filing of the removal petition. *Id.* The eighth and twelfth defendants joined in the petition for removal on June 20, 1998, which was the thirtieth day from the time of service on the eighth defendant and well within the time limit for the twelfth defendant, but more than thirty days after the first set of three defendants was served. *Id.*

In moving to remand the case to state court, the plaintiffs argued that the defendants were required to consent to the removal petition within thirty days of service on the first group of defendants. *Id.* The district court rejected that contention, holding that individual defendants have thirty days

from the time they are served with process or with a complaint to join in an otherwise valid removal petition. *Id.*

The issue in *McKinney* was whether the eighth defendant (referred to as "B") had thirty days from the date he was served to join the removal petition or whether he had to join the removal petition within the thirty days of service on the first three defendants (referred to as "A"). *Id.* at 926. Footnote 3 of the opinion appears at this point, setting forth the necessary corollaries to our later adoption of the principle that a removal petition must be filed within thirty days of service on the first-served defendant:

> In a different situation, where B is served *more than* 30 days after A is served, two timing issues can arise, and the law is settled as to each. First, if A petitions for removal within 30 days, the case may be removed, and B can either join in the petition or move for remand. . . . Second, if A does not petition for removal within 30 days, the case may not be removed.

*Id.* at 926 n.3.

Turning to the issue before the court, we began our analysis in *McKinney* by noting that, since § 1446(b) contemplates only one defendant, the language of the section does not provide any guidance when multiple defendants are served on different days. *Id.* at 926. We then observed that the legislative history of § 1446(b) does not address the situation where multiple defendants are served on different days. *Id.* As a result, we turned to the circuit case law and noted that the Fifth Circuit was the only circuit to address the issue of removal in multiple-defendant cases. *Id.*

In *Getty Oil Corporation v. Insurance Company of North America*, 841 F.2d 1254 (5th Cir. 1988), three defendants were served, the first on September 3, the second on Septem-

ber 5, and the third on September 24. *Id.* at 1256. The first and second defendants petitioned for removal on September 26, but the third defendant joined the petition on October 24, which was thirty days after it was served but fifty-one days after the first defendant was served. *Id.* The *Getty Oil* court held that: (1) a removal petition must be filed within thirty days of the date of service on the first-served defendant and (2) a later-served defendant must join the removal petition "no later than thirty days from the day on which the first defendant was served." *Id.* at 1263.

In addressing *Getty Oil*'s holdings in *McKinney*, we first noted our *explicit* agreement with *Getty Oil*'s first holding, stating that the first-served defendant "clearly *must* petition for removal within thirty days." *McKinney*, 955 F.2d at 926 (emphasis added). Following our agreement with the first holding of *Getty Oil*, we proceeded to address the question raised by *Getty Oil*'s second holding, that is, the question of whether a later-served defendant must join the petition within thirty days of the date of service on the first-served defendant, as the court held in *Getty Oil*, or within thirty days of service on the later-served defendant. *Id.* at 926-28. In rejecting the second holding of *Getty Oil*, we first observed that it would be "inequitable" to require a later-served defendant to join a timely filed removal petition within thirty days of the date of service on the first-served defendant. *Id.* at 927.

We next rejected the plaintiffs' argument that it should be entitled to know within a prescribed period of time whether the case will proceed in state or federal court, noting first that, if the plaintiffs wanted to know which court they will be in at the earliest possible date, they need only to make sure that all defendants are served at about the same time. *Id.* Second, we noted that the plaintiffs' entitlement was no greater than the defendant's right to remove a case that could be heard in federal court. *Id.*

Finally, we considered a policy concern, which was not present when *Getty Oil* was decided. In 1988, Congress

amended § 1446(a) to make petitions for removal subject to Rule 11 of the Federal Rules of Civil Procedure. *Id.* at 928. We observed that, as amended, § 1446(a) is a further reason to allow all defendants a full thirty days to investigate the appropriateness of removal. *Id.* Otherwise, a later-served defendant faced a Hobson's Choice: either to join hurriedly in a petition for removal and face possible Rule 11 sanctions or to forego removal. *Id.* In our view, Congress surely did not intend to impose such a choice on a later-served defendant. *Id.*

The majority chooses to reject the *McKinney* Intermediate Rule essentially by isolating its examination of the case to Footnote 3 and characterizing the footnote as *dicta*. Whether Footnote 3 is *dicta* is really beside the point and of no material importance. The critical point of the *McKinney* decision is that the *McKinney* court *explicitly* embraced *Getty Oil*'s first holding that a petition for removal must be filed within thirty days of the date the first-defendant is served. *Id.* at 926. Once the *McKinney* court so embraced, Footnote 3 provides, by way of explanation, two necessary corollaries to our agreement with *Getty Oil*'s first holding. Both such corollaries arise where the later-served defendant is served more than thirty days after the first-served defendant is served. In the first necessary corollary, removal is permitted if the first-served defendant petitions for removal within thirty days of being served and the later-served defendant joins the petition for removal within thirty days of being served. *Id.* at 926 n.3. In the second necessary corollary, removal is not permitted if the first-served defendant does not petition for removal within thirty days of being served. *Id.*

The majority states that Footnote 3 of *McKinney* "constitutes non-binding dicta." *Ante* at 13. According to the majority, in *McKinney*, there was a timely petition for removal filed within thirty days of service on the first-served defendant(s) and in the present case the first-served defendant did not so petition. From this fact, the majority concludes that "the issue of initial removal by a defendant other than the first-served

defendant was simply not before the court in *McKinney*." *Ante* at 14. Because the issue of initial removal was not before the *McKinney* court, the majority goes on to state that "the *McKinney* court's expression in Footnote 3 regarding the application of § 1446 in the circumstance where the first-served defendant had not timely filed a notice of removal was gratuitous," and thus, Footnote 3 is "classic judicial dictum." *Ante* at 14.

The obvious flaw in the majority's analysis is its initial premise—that the *McKinney* court did not address the question of initial removal. Clearly, the *McKinney* court **did**, when it agreed with the *Getty Oil* court's first holding that the first-served defendant must petition for removal with thirty days of being served. This agreement with the *Getty Oil* court's first holding was critical to the decision, in that it closed the door to a reading of § 1446(b) that would have allowed later-served defendants to petition for removal within thirty days of being served when the first-served defendant had not. *Cf. Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 66-67 (1996) ("We adhere in this case, however, not to mere *obiter dicta*, but rather to the well-established rationale upon which the Court based the results of its earlier decisions. When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.").

To get around the obvious flaw in its analysis, the majority out of necessity describes our adoption of *Getty Oil*'s first holding as dicta as well. The problem with this description is that *McKinney* outlined what were the requirements for removal in multiple-defendant cases, just like a court outlines the requirements for a plaintiff to maintain a certain cause of action. The first requirement outlined in *McKinney* was that a timely removal petition must be filed within thirty days of the date the first-served defendant is served. Of course, the *McKinney* court could have chosen a very different analytical path, holding that such a removal petition need not be filed

within that time, *i.e.*, within thirty days of the date any of the defendants were served. However, the *McKinney* court closed that very door with its adoption of *Getty Oil*'s first holding.

In sum, none of the defendants sought to remove the case within thirty days of the date the International was served. Consequently, under *McKinney*, removal was improper.

C

In its opinion, the majority also relies upon the Supreme Court's decision in *Murphy Brothers* and suggests that this "no[n-] dispositive" case, *ante* at 16, mandates that we reject our *McKinney* Intermediate Rule. *Murphy Brothers* **did not** involve multiple defendants. It involved a single defendant, and the issue to be decided was what service event triggered the running of the thirty-day window. The plaintiff argued that the January 29, 1996 service of a faxed courtesy copy of the complaint triggered the running of the thirty-day window; the defendant countered that February 12, 1996, the date of formal service in accordance with local law, triggered the running of the thirty-day window. 526 U.S. at 348. The Court held that a defendant's time to remove "is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Id.* The Court did not address, or even mention, the First-Served Defendant Rule, the *McKinney* Intermediate Rule, or the Last-Served Defendant Rule, or, for that matter, consider how to calculate the period for removal in a case involving multiple defendants served at different times. Indeed, *Murphy Brothers* was based on the principle that "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Id.* at 347. That principle is not threatened or even implicated in this case. The *McKinney* Intermediate Rule simply does not require or obligate later-served defendants to

engage in litigation prior to service. Moreover, completely different considerations come into play in cases involving multiple defendants. Under such circumstances, it is unfathomable, absent an *en banc* decision from this court or a Supreme Court case explicitly or implicitly overruling the *McKinney* Intermediate Rule, that *Murphy Brothers* mandates that we reject our *McKinney* Intermediate Rule.

D

My analysis need not proceed further, as it is clear at this point that removal was improper under our decision in *McKinney* and that *Murphy Brothers* did not, explicitly or implicitly, overrule *McKinney*. However, I offer these brief comments concerning what appears to be the real rub in the case, the majority's disdain for the *McKinney* Intermediate Rule. Such disdain appears to emanate from the court's view that the *McKinney* Intermediate Rule is inequitable, because it allows earlier-served defendants to decide whether a case remains in state court or is removed to federal court. *Ante* at 17 (noting that *McKinney* sought to avoid inequitable results). However, our embracement of the *McKinney* Intermediate Rule is not as off-the-wall as the majority would have us believe. The *McKinney* Intermediate Rule is an inevitable feature of a court of limited jurisdiction. Where a removal petition is not filed within thirty days of service on the first-served defendant, the later-served defendants are in no worse position than they would have been if the first-served defendant (or any other defendant) had opposed removal. As Judge Shedd noted in his district court opinion in *Branch*, "[t]he Court sees no reason why [the first-served defendant's] failure to remove in a timely manner should be viewed differently simply because another defendant is in the case." 83 F. Supp. 2d at 636. Moreover, the inequity sought to be avoided in *McKinney* was the First-Served Defendant Rule's requirement that a later-served defendant join the removal petition within the first-served defendant's thirty-day window, and unquestionably the *McKinney* Intermediate Rule avoids this inequity.

Finally, the *McKinney* Intermediate Rule is less intrusive than the Last-Served Defendant Rule on the principle that we construe removal statutes strictly, *Shamrock Oil*, 313 U.S. at 108-09, as the Last-Served Defendant Rule offers the most expansive reading of § 1446(b). To be sure, the Last-Served Defendant Rule provides the greatest potential for delay in the removal context.

Another equitable feature of the *McKinney* Intermediate Rule is that it prevents the first-served defendant from benefiting from his inaction. In effect, the *McKinney* Intermediate Rule requires the first-served defendant to act, and if he does not, he forfeits his right to remove the case or to consent to the removal. Every day litigants are penalized for their failure to act. And the facts of this case certainly do not help the defendants' cause. The defendants were all represented by the same attorneys and the most sophisticated of the three defendants, the International, was served first and deliberately chose not to remove the case. Yet, under the majority's adoption of the Last-Served Defendant Rule, the International receives a benefit from its inaction, being allowed to join a removal petition more than thirty days after service on it, unlike many defendants who fail to timely remove their cases. If *McKinney* is concerned with equity, as the majority intimates, the equities in this case simply do not favor the defendants.

Rightly or wrongly, *McKinney* sought to strike an equitable balance, allowing a later-served defendant thirty days to act in the limited circumstance where a timely petition was filed by an earlier-served defendant. This balance was a consequence of the *McKinney* court's desire to avoid reading words (*e.g.*, first-served or last-served) into the statute. In other words, to give effect to all the language in § 1446(b), *McKinney* sought to require *every* defendant to act *within thirty days of being served*, beginning with the first-served defendant. If a removal petition was not filed within thirty days of service on the first-served defendant, then the case could not be

removed. If a petition was so filed, then every later-served defendant can join or seek a remand to state court. Obviously, the Last-Served Defendant Rule does not require *any* of the defendants to act in a timely manner, except the last-served. Having to choose between a reading of the statute that required all of the defendants to act in a timely manner as opposed to one, we chose the construction that would apply to all defendants in the event removal is to be achieved. There is nothing inequitable about interpreting § 1446(b) in a manner that applies its thirty-day timeframe to all defendants where removal is to be achieved.

## II

In the final analysis, this case is about much more than whether one agrees or disagrees with the *McKinney* Intermediate Rule. It is about how one panel of this court should treat the opinion of a prior panel or view the impact of a non-dispositive Supreme Court case on our circuit precedent. I am concerned that the majority's opinion will lead to a deterioration of the respect we have given over the years to an opinion of a prior panel, which panel spoke for the entire court. While such respect fosters collegiality, more importantly, it maintains uniformity in our decisions. I am also concerned that the majority's use of a non-dispositive Supreme Court case to effectively overrule our established circuit precedent will open the door to further manipulation of such precedent.

It is my fervent hope that *en banc* review will be sought and ultimately granted by the full court, so that the ideals of respect, collegiality, and uniformity, hallmarks of the Fourth Circuit, remain intact, regardless of the outcome. Clearly, an *en banc* setting is the best, and appropriate, place for the court to give the *McKinney* Intermediate Rule thumbs-up or thumbs-down.

It follows that I would vacate the district court's decision holding that the defendants' petition for removal was timely

filed and remand the case to the district court with instructions to remand the case to state court.